MIXIS, Plaintiff and Respondent, v. WISCONSIN PUBLIC
SERVICE COMPANY, Defendant and Appellant: WALTER
KIDDE & COMPANY and others, Impleaded Defendants
and Respondents.

*January 7—February 5, 1965.*

492

For the appellant there was a brief by *Klueter, Larson & MacKenzie* of Wausau, and oral argument by *H. R. Klueter.*

For the respondent John A. Mixis there was a brief by *George D. Young* of Milwaukee and *Robert W. Dean* of Wausau, attorneys, and *Theodore L. Priebe* of Milwaukee and *Larry W. Rader* of Wausau of counsel, and oral argument by *Mr. Priebe.*

For the respondent Walter Kidde & Company there was a brief by *Welsh, Trowbridge, Bills, Planert & Gould* of Green Bay, and oral argument by *Lloyd J. Planert.*

For the respondents Automatic Sprinkler Corporation of America and La Mar Reeves, there was a brief by *Joyce & Goggin* of Neenah, and oral argument by *Daniel R. Goggin.*

CURRIE, C. J.  Public Service seeks a new trial on this appeal because of alleged prejudicial errors occurring during the course of trial. We consider the two most important of these alleged errors to be:

(1) The *res ipsa loquitur* instruction given by the trial court to the jury.

(2) The failure of the trial court to include questions in the special verdict inquiring with respect to the alleged causal negligence of Kidde.

Two other alleged errors will be commented upon later in the opinion.

### The Res Ipsa Loquitur Instruction.

The *res ipsa loquitur* instruction given by the trial court reads as follows:

"You are instructed further that if you find that the defendant Wisconsin Public Service Company had exclusive

control of the reactor involved in this accident, and if you further find that the accident is of a type that ordinarily would not have occurred had the defendant Wisconsin Public Service Company exercised ordinary care, then you may infer from the accident itself, and the surrounding circumstances, that there was negligence on the part of the defendant Wisconsin Public Service Company, unless said defendant has offered you an explanation of the accident which is satisfactory to you."

Plaintiff's complaint contained this allegation:

". . . the plaintiff and his fellow workmen were handling a fish tape to which was attached a copper tubing to be installed as a part of the sprinkler system; that said fish tape or copper tubing, as the plaintiff has been informed and verily believes, through the negligence of the defendant, its agents or servants, came in touch with an exposed transformer or reactor, and this caused an explosion which, in turn, caused the plaintiff to be thrown violently from the ladder to the floor, and in the process, said plaintiff sustained substantial injuries as hereinafter alleged."

The cross complaint of Public Service against Kidde alleged upon information and belief that plaintiff "was in fact injured as he alleges." The cross complaint of Kidde against Automatic Sprinkler and Reeves also alleged by information and belief that Reeves was negligent in the manner in which he handled the fish tape and copper tubing, that he dropped the fish tape and tubing from the ladder on which he was standing and that the tape or tubing came in contact with the reactor causing the explosion which injured plaintiff. Thus, insofar as the pleadings are concerned, the only explanation of how the arcing of the reactor took place is that either the fish tape or copper tubing dropped by Reeves came in contact with the reactor. At the trial it developed that Reeves did not drop any copper tubing but only the fish tape. The complaint was never amended so as to allege that the arcing occurred from any cause other than the fish

tape coming in contact with the reactor. Nevertheless, plaintiff's counsel argued to the jury the possibility that such arcing or "explosion" may have occurred through some unknown cause for which Public Service was responsible. Thus it is apparent that two alternative theories were considered by the jury: One, that the dropped fish tape came in contact with the reactor; the other, that the arcing of the reactor was due to some unknown cause.

A careful review of the record discloses that the great weight of the evidence tends to establish that the arcing of the reactor was caused by the fish tape coming in contact with it. Three Public Service employees, Luoma, Fonder, and Aerts testified that a 15 to 16-inch piece of the fish tape was found on the floor of the reactor after the accident and that they saw 15 to 25-feet of fish tape spread out on the floor outside. The smaller piece inside the reactor had the hook on one end, and the other end indicated that it had been burned off. One end of the larger piece also indicated that it had been burned off. In addition, Oberg, a fellow employee of plaintiff's, who testified as a witness for plaintiff, saw Luoma with the 15-inch piece of fish tape in his hand telling other persons present that he had found it in the reactor. Oberg further testified that one end of this piece of fish tape was burned and not the other. Furthermore, when the arcing occurred a circuit breaker momentarily shut off the current to the reactor, but immediately thereafter permitted the current again to flow into the reactor. The reactor continued to operate for several hours before the current was shut off in order to make repairs to the reactor. If the arcing was due to a short circuit of the reactor without any foreign object coming in contact with it, it is difficult to conceive that it would have continued to operate satisfactorily for some hours afterwards.

To term the arcing an explosion is probably an inaccurate expression. The damage to the reactor consisted of a two-foot hole in the linen screen at the top, the melting off of some copper from one portion of the reactor, and the burning off of the glazed coating to two of the four porcelain insulators on which the bottom phase of coils sat. A small burn mark was found on the metal screens near the bottom of the reactor, and another burn mark was found on the coil on the bottom phase of the reactor about 22 inches above the floor. There was also dirt and smudge from the arcing. The reactor was in no way internally damaged or distorted.

The testimony of the electrical-engineer experts called by Public Service was that the arcing had been caused by some foreign object coming in contact with one of the reactor coils or copper connections, or by such object getting within $\frac{1}{4}$ th of an inch distance therefrom. Although plaintiff produced no electrical expert, on cross-examination of defendant's expert witnesses, he attempted to show three possible causes of the arcing other than the fish tape having come in contact with the reactor. One possibility explored was that dust and dirt had accumulated in the reactor cabinet. The expert opinion, however, was all to the effect that this would not have produced an arcing. The second possibility was that, by covering the top of the reactor with the rubber blankets, ventilation had been cut off and overheating had produced the arcing. Again the expert testimony was to the effect that this would not cause arcing. The third possibility was that a short circuit had occurred outside the generating plant which would cause a surge of electricity into the reactor. The expert witness explained that this likewise would not cause an arcing but could cause serious damage to the reactor. Thus, so far as the expert testimony is concerned, there was no explanation of any condition

which would have produced the arcing except that of the fish tape or some other foreign object coming in contact, or very close proximity, with the reactor.

While the testimony was in conflict as to whether there was much spring or recoil of the fish tape when dropped on the concrete floor by Reeves, the finding of the short piece of fish tape inside the reactor cabinet is overwhelming evidence that the fish tape was the foreign object which did come in contact with the reactor.

Plaintiff contends that, if the dropping of the fish tape was a cause of the arcing, Public Service, nevertheless, was also causally negligent in one or more of these respects: (1) By not shutting off the current to the reactor while employees of Automatic Sprinkler were working nearby; (2) by not covering the lower vent screens of the reactor; or (3) by not stationing an employee in the room while plaintiff and his fellow employees were working there. It would be highly prejudicial, however, to give plaintiff the benefit of a *res ipsa loquitur* instruction to prove any of these three acts of alleged specific negligence. Incidentally, we do not believe the safe-place statute required Public Service to shut off the current to the reactor, and we have serious doubt whether the safe-place statute required that an employee of Public Service be stationed in the room.

Therefore, the only phase of the case with respect to which a *res ipsa loquitur* instruction would be proper would be the theory of arcing due to an unknown cause. Before it was instructed as to *res ipsa loquitur,* the jury should have been instructed that there were two theories or explanations with respect to what caused the arcing, one, that the fish tape had come in contact with the reactor; the other, that it was due to an unknown cause. Further, the *res ipsa loquitur* instruction should have been so worded that it would be only applicable if the jury first found that the fish tape did not

come in contact with the reactor so that arcing was due to an unknown cause.

In reaching this conclusion with respect to the proper limitation of the *res ipsa loquitur* instruction we have considered such past decisions of this court as *Wood v. Indemnity Ins. Co.* (1956), 273 Wis. 93, 76 N. W. (2d) 610, and *Wisconsin Telephone Co. v. Matson* (1950), 256 Wis. 304, 41 N. W. (2d) 268, but do not consider either of those cases controlling under the particular facts of this case.

Respondents argue that the jury, by finding that the negligence of Reeves was not causal, in effect found that the dropping of the fish tape was not the cause of the reactor arcing. This being so, it is contended that the giving of the *res ipsa loquitur* instruction could not have been prejudicial because the jury could have only applied this instruction to an arcing of the reactor due to an unknown cause. While this is a plausible argument, we have serious doubts whether the jury's answer to the causation question relating to Reeves was a finding on their part that the fish tape did not cause the arcing. The argument of plaintiff's counsel was recorded by the reporter and constitutes part of the record. In that part of the argument dealing with the causation question with respect to Reeves, counsel stated:

"It is my belief that if you find that Mr. Reeves was negligent in any way, then this question, the fourth question, should be answered 'no,' because had he done anything that he shouldn't have done there it certainly wasn't any cause of the particular injuries that Mr. Mixis sustained, due to the fact that the Public Service failed to maintain this reactor and failed to block up this air duct that we talked about and certainly were the causes of Mr. Mixis' injuries and the explosion in question."

If the jury "bought" this argument on causation they would have answered the Reeves causation question as they

did, even though they had concluded that the fish tape dropped by Reeves had come in contact with the reactor.

However, if, as now argued for by respondents, the jury did find that the fish tape did not come in contact with the reactor causing the arcing, such a finding would be contrary to the great weight of the evidence and we would deem it to be our duty to order a new trial in the interests of justice. We conclude that a new trial is required in the interests of justice because of the giving of the unqualified *res ipsa loquitur* instruction and because of the jury's answer, "No," to the causation question with respect to Reeves.

### *Failure to Include in Verdict Question With Respect to Kidde's Alleged Negligence.*

The record is not clear as to why the trial court denied Public Service's request that the verdict contain questions inquiring with respect to Kidde's possible causal negligence. Apparently the reason for this was that the trial court concluded that Kidde would be bound by any act of its subcontractor, Automatic Sprinkler, and the latter's employees. Thus Kidde would be bound by a finding by the jury of causal negligence on the part of Reeves. Public Service contends, however, that Kidde was causally negligent in certain respects beyond the dropping of the fish tape by Reeves.

Public Service relies upon this provision in its written contract with Kidde for the furnishing and installation of the fire-protection system:

"The Contractor [Kidde] shall give his personal attention to the work being done under this contract and shall perform the work in a safe and workmanlike manner. He shall comply with all statutes, ordinances, orders, rules and regulations pertaining to the protection of workmen, frequenters and the public from injury or damage and shall take all other reasonable precautions to protect workmen, frequenters and the public from injury or damage. He shall have control and custody of the places where his work is being done until the

work is completed and accepted by the company and shall make, keep and leave the same as safe as the nature of the premises and the work will reasonably permit."

Styles, the installation supervisor for Kidde, testified that on February 13, 1958, he met with Luoma, superintendent of Public Service's Oshkosh plant, and another Public Service employee. He thought Reeves was also present at this meeting. It was then agreed that each day Public Service was to see that the area where the sprinklers were to be installed was safe. It was further understood that before working in an area the employees of Automatic Sprinkler would check with the Public Service man in charge. Luoma corroborates this to the extent of having testified that Public Service had "control and custody of the place, as far as making it safe" for Mixis and the other workmen. In fact Luoma did not depend on the workmen to make the area safe. We consider the undisputed evidence discloses that it was understood between Kidde and Automatic Sprinkler on the one hand and Public Service on the other that any safeguarding of the reactor was to be done solely by Public Service and that Public Service assumed this responsibility. However, this did not absolve Kidde from any other duty imposed upon it by the above-quoted portion of its contract.

It is undisputed that no one on behalf of Kidde or Automatic Sprinkler advised Public Service that any fish tape was to be used in the area where the accident occurred. Public Service did know that work in the ceiling area close to the reactor was to be undertaken by Automatic Sprinkler's employees on the day of the accident. Public Service adequately protected against any objects being dropped on the top screens of the reactor by placing the rubber mats across the top. It is at least arguable that Public Service had no duty to cover up the bottom metal screens of the reactor in the absence of notification that fish tape was to be used on the job. We conclude that a

jury issue was presented as to whether Kidde was negligent in that neither it nor Automatic Sprinkler notified Public Service of the use of the fish tape.

It was prejudicial error, therefore, on the part of the trial court to have denied Public Service's request to include in the verdict questions inquiring with respect to Kidde's causal negligence. This provides a further ground for granting a new trial on the issues raised on the cross complaints though it would not afford a basis for a new trial with respect to plaintiff's cause of action against Public Service.

### Other Alleged Errors.

Because a new trial is to be had on all issues we deem it advisable to consider two other alleged errors raised by appellant Public Service. The first of these has to do with the question propounded by the trial court to the jury upon the *voir dire* examination. This question was worded as follows:

"Is there any member of this jury panel who is employed either as an agent or an adjuster of any insurance company, or employed by any insurance company in any other capacity, except that you might be a policyholder? I guess we are all policyholders in one company or another."

Prior to conducting the *voir dire* examination the trial judge held a conference with counsel in the absence of the jury with respect to the questions to be propounded by the court to the jury, and counsel for all defendants therein objected to the giving of a question asking whether any of the jurors were employed as agents or in any other capacity by any insurance company. We are satisfied from the review of what took place in this conference that plaintiff did not make a proper showing which would have justified the propounding of this question under the rule laid down in *Filipiak v. Plombon* (1962), 15 Wis. (2d) 484, 113 N. W. (2d) 365.

We further hold that counsel for Public Service made sufficient objection on record to the propounding of this question in such conference, and that they did not thereafter have to again voice an objection in order to preserve the claimed error for purposes of grounding a motion for a new trial.

Under the facts of this case, where the defendant Public Service was well known to the jurors to be a large public utility corporation, we do not believe that the asking of such improper question prejudiced defendant. Therefore, we are not grounding our direction for a new trial on this error.

The other alleged error has to do with the ruling of the trial court on evidence. Plaintiff, in order to prove damages in the nature of wage loss, endeavored to establish that some months after the accident Automatic Sprinkler discharged him because of his inability, due to injuries received in the accident, to perform his duties as a working foreman. Over objection he testified he knew why he was laid off. Then this further question was propounded: "Can you tell the court and jury why you were laid off?" Counsel for Public Service objected because the question called for either the conclusion of the witness or hearsay or both. The objection was overruled and plaintiff answered:

"Because I couldn't perform my duty like climbing; handling pipe, on account of dizzy spells I couldn't climb, and I can't hear. 'You' couldn't hear what the people were saying from the top of—floor, like if 'you' are up on a 15-foot ladder in that area like that."

We are of the opinion that the objection should have been sustained at that stage of the testimony. However, if before such question had been asked the plaintiff testified that dizziness and loss of hearing prevented him from doing work upon ladders as is required of a foreman, the trial court in its discretion could permit him to testify that his employer laid him off for those reasons. Although the reason advanced to

the employee in such a situation would be hearsay, the truth of such reason would have been established by the employee's own testimony as to his inability to perform his duties. While this situation does not fit into any of the well-recognized exceptions to the hearsay rule, the evidence adduced does have some probative value.

*New Trial.*

Public Service contends that the damages awarded by the jury are excessive. One of the reasons advanced for such contention was that there was no medical testimony in the record to establish that plaintiff's claimed dizzy spells were due to the accident or were permanent. The trial court gave no instruction that the jury could not consider this element of dizziness in awarding damages for future wage loss and permanent injury. Therefore, we conclude the new trial should extend to the issue of damages as well as the issues of negligence.

We recommend that on the new trial a question be included in the special verdict reading substantially as follows:

"Did the fish tape dropped by defendant La Mar Reeves come in contact with the reactor so as to cause the arcing of the reactor which injured plaintiff John A. Mixis?"

With respect to submitting special fact questions see *Chapnitsky v. McClone* (1963), 20 Wis. (2d) 453, 463, 122 N. W. (2d) 400; *Fehrman v. Smirl* (1963), 20 Wis. (2d) 1, 28, 121 N. W. (2d) 255, 122 N. W. (2d) 439; *Sharp v. Milwaukee & Suburban Transport Corp.* (1963), 18 Wis. (2d) 467, 481, 118 N. W. (2d) 905.

If the plaintiff on the new trial intends to rely on the theory that the arcing was produced by an unknown cause it is incumbent upon him to move to amend his complaint to allege this.

*By the Court.*—Judgment reversed, and cause remanded for a new trial on all issues.