STATE of Wisconsin, Plaintiff-Respondent,

v.

Matthew R. BERGERON, Defendant-Appellant.†

Court of Appeals

*No. 90–2233–CR. Submitted on briefs March 1, 1991.—Decided April 17, 1991.*

(Also reported in 470 N.W.2d 322.)

†Petition to review denied.

524

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Mitchell Barrock* of *Barrock & Barrock* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Michael R. Klos,* assistant attorney general.

Before Nettesheim, P.J., Brown and Anderson, JJ.

BROWN, J. Matthew R. Bergeron appeals his judgment of conviction for five counts of sexual assault in violation of sec. 940.225(2)(a), Stats. His main argument is that the trial court erred when it allowed testimony regarding his use of an alias. We hold that the testimony about an alias was admissible because it was necessary to a full presentation of the background facts of the case. Since Bergeron used an alias to identify himself to his victim, the testimony about his alias constituted evidence of an "other act" that was probative and admissible under sec. 904.04(2), Stats.

Bergeron makes two additional arguments: that his statement to law enforcement officials was involuntary

because he was questioned in the coercive environment of a prison on a Sunday when an attorney is not immediately available; and that the charges and sentences were multiplicitous. We conclude that Bergeron's statement to police was not involuntary since there was no evidence of improper police behavior. We also conclude that the five charges and sentences were not multiplicitous because Bergeron committed separate volitional acts. We affirm the judgment of conviction.

Bergeron worked for a carnival that was in Menomonee Falls, Wisconsin from May 19 to 22, 1988. He met S.S. and her friend, D.G., at a bakery where they worked. He introduced himself to them as "Brice," which was an alias he had used in the past. On Friday night, May 20, the women had a beer with Bergeron at a bowling alley, drove him to a pool hall, and, when the pool hall closed, drove him back to the carnival grounds.

On Saturday, May 21, the women did not see Bergeron, although they visited the carnival briefly. About 4:00 A.M. on Sunday, May 22, S.S. awoke to find Bergeron crouched at the foot of her bed. Bergeron sexually assaulted S.S. for about two hours by three acts of vaginal intercourse, three of fellatio and three of cunnilingus, as well as by touching her breasts and vagina. When Bergeron heard a noise, he left by the same window he had used to enter S.S.'s bedroom. During the assault, Bergeron had his hand on S.S.'s neck, occasionally cut off her air, and threatened to kill her.

The police eventually found Bergeron in Florida in April 1989. However, he was extradited to Kentucky before he was returned to Wisconsin to stand trial for the sexual assault of S.S. In November 1989, a detective from the Menomonee Falls Police Department questioned Bergeron about the assault of S.S. for approximately one hour on a Sunday at the Kentucky state

prison where Bergeron was an inmate. The detective was accompanied by a deputy from the Waukesha County Sheriff's Department. The sheriff's deputy did not interrogate Bergeron and was outside the room during some of the questioning. Bergeron was not handcuffed. The detective advised Bergeron of his rights using the standard form of the Menomonee Falls Police Department.

Bergeron gave the detective an oral and written statement of the events at issue. Bergeron admitted that he entered S.S.'s bedroom through the window and engaged in sexual activity, but he claimed the manner of entry was pre-arranged and the sexual activity was consensual.

The state charged Bergeron with five counts of second-degree sexual assault contrary to sec. 940.225(2)(a), Stats.: one count each of sexual intercourse by fellatio, vulvar penetration, and cunnilingus, and one count each of sexual contact for touching the breasts and vagina. The jury found Bergeron guilty on all five counts. For each count of sexual intercourse, the court sentenced Bergeron to sixteen years and ordered the sentences to be served consecutively. For each count of sexual touching, the court sentenced Bergeron to five years and ordered the sentences to be served consecutive to each other but concurrent to the sentences for unlawful sexual intercourse.

### THE ALIAS

Before addressing the merits of the alias issue, we comment on the state's waiver argument. The state argues that Bergeron waived his right to appeal on this issue because, when denying Bergeron's motion *in limine* to suppress all evidence relating to his prior use of aliases, the trial court told Bergeron he could object dur-

ing trial to testimony about an alias. However, Bergeron did not object when S.S. and her friend, D.G., testified that he introduced himself as "Brice," that they met "Brice" at the bowling alley, and that they gave "Brice" a ride home from the pool hall.

We disagree that waiver applies. A defendant who has raised a motion *in limine* generally preserves the right to appeal on the issue raised by the motion without also objecting at trial. That is the purpose of a motion *in limine,* as noted by a leading textbook on trial advocacy.

> An unfortunate anomaly in our jury system is the human tendency of juries to be influenced by evidence that is not material to the issues of the lawsuit. If a lawyer has extrinsic problems clouding precise issues of the lawsuit, he should consider methods [such as a motion *in limine*] of preventing these immaterial and harmful facts from creeping into the case.

A. Morrill, *Trial Diplomacy* 219 (2d ed. 1972).[1] Thus, the purpose of a motion *in limine* is to minimize chances that a jury will pay special attention to certain evidence just because there was an objection at trial to its use. In fact, we observe that Bergeron makes this exact point with reference to the state's waiver argument. He asserts that his failure to object at trial was part of his trial

---

[1]We also note that Wigmore's treatise on evidence cites the Wisconsin case of *Mixis v. Wisconsin Pub. Serv. Co.,* 26 Wis. 2d 488, 502-03, 132 N.W.2d 769, 776 (1965), for the proposition that an objection at trial is not required after the objection is made by means of a motion *in limine.* 1 J. Wigmore, *Evidence* sec. 18, at 802 n.7. We question Wigmore's citation of *Mixis* for this proposition because *Mixis* did not use the term "motion *in limine*" and it dealt with a pretrial motion concerning questions to be asked of prospective jurors. However, Wigmore's proposition is sound.

strategy to minimize prejudice from the state's use of the alias.

We caution that if the issue raised by appeal is different in fact or law from that presented by the motion *in limine,* then waiver may be found if no objection was made at trial. Whether the motion *in limine* relieves the party from having to object depends on whether the motion alerted the trial court to the same issue of fact or law that arises at trial. We determine that Bergeron's motion *in limine* did not differ in fact or law from what occurred during trial. Therefore, there was no waiver; we address the merits.

Bergeron claims that testimony about an alias connotes a criminal mindset and is thus comparable to inadmissible character evidence. He asserts that the alias must be directly related to proof of identity or proof of one of the elements of the crime to be admissible. He further claims that his identity was not at issue in the trial and so the alias was not necessary to connect him to the acts charged or to prove any of the elements of the crime. Thus, he contends, the state's use of the alias lacked probative value and did not outweigh the prejudice resulting from its use.

Whether testimony concerning use of an alias will be admitted into evidence is an evidentiary ruling made by the trial court. Evidentiary rulings are discretionary determinations. *State v. Oberlander,* 149 Wis. 2d 132, 142, 438 N.W.2d 580, 584 (1989). We will not find an abuse of discretion if there is a reasonable basis for the trial court's determination. *Id.*

While admissibility of evidence concerning use of an alias is an issue of first impression in Wisconsin, courts in other jurisdictions offer guidance on this issue. An

alias has been held to be inadmissible character evidence when it was gratuitously inserted into a case. *See United States v. Williams,* 739 F.2d 297, 299–300 (7th Cir. 1984); *see also United States v. Moya-Gomez,* 860 F.2d 706, 762 (7th Cir. 1988), *cert. denied,* 492 U.S. 908 (1989). In *Williams,* for instance, the prosecutor gratuitously used the defendant's nickname, "Fast Eddie," although the name had no nexus to the crime or the surrounding facts. The court concluded that the prejudice in using the name was great while its probative value was nil.

In contrast, it has been held that an alias is admissible when it forms part of the background of the case. Thus, in *United States v. Jorge-Salon,* 734 F.2d 789, 791–92 (11th Cir.), *cert. denied,* 469 U.S. 869 (1984), the court permitted reference to a defendant's alias where it was the last word uttered by one of the victims. Moreover, the court cited the jury's reported difficulty with the real names of the defendants as a reason supporting the admissibility of the aliases. *Id.* at 792.

■
Section 904.04(2), Stats., supports the use of an alias at trial if it is related to the facts of the case. Section 904.04(2) permits the admission of evidence relating to acts other than the crime charged when offered for purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. This listing of circumstances in sec. 904.04(2) is not exclusionary but illustrative. *State v. Shillcutt,* 116 Wis. 2d 227, 236, 341 N.W.2d 716, 720 (Ct. App. 1983).

■
Bergeron's alias was relevant to show his intent to cover up his participation in the sexual assault. It also constituted part of the background facts of the case. He

introduced himself to S.S. and her friend as "Brice." The women knew him as "Brice." His alias was part of the context of the women's testimony about the facts of the crime Bergeron committed. If they had testified that he introduced himself by his real name, "Matthew," they would have been altering the facts of the case. Thus, Bergeron's alias was probative and admissible because it was an "other act" covered under sec. 904.04(2), Stats.

██

Regardless of whether the evidence is admissible under sec. 904.04(2), Stats., the trial court must still exercise its discretion to determine whether any resulting prejudice outweighs the probative value. *Shillcutt,* 116 Wis. 2d at 237, 341 N.W.2d at 720. At the hearing on Bergeron's motion *in limine,* the trial court stated:

> Unfortunately he has done that to himself. It's part of the case in chief. If people run around using aliases, they suffer the consequences. If it comes up as part of what anyone knew of him or identity that he related to anyone, that is relevant to the issues to be decided by the jury. I cannot protect him from using aliases. It may be prejudicial, but he has done that to himself if that is how it develops in the case in chief. I cannot grant a motion in limine just to protect a defendant from his own actions or representations.[2]

---

[2]We note that the trial court did suppress use of all Bergeron's prior aliases except the one he used to identify himself to S.S. and her friend. Moreover, the court also struck the phrase, "which is an alias from my arrest in Texas," from the statement Bergeron gave to the detective who questioned him in the Kentucky prison. Thus, it is obvious that the trial court's discretionary decision contemplated a process of reasoning; it was not an arbitrary exercise.

Bergeron argues that the trial court abused its discretion by this determination since the use of an alias is "inherently suspect." We agree with the trial court that the evidence prejudices Bergeron. Most evidence produced by the state in a criminal trial will "prejudice" a defendant. However, where the prejudice is outweighed by the probative value, then it is not "unfair" prejudice. Section 904.03, Stats. Here, the evidence was not admitted to show "bad character" or a "criminal mindset" but was relevant evidence properly admitted under our rules. We conclude that the trial court did not abuse its discretion.

## VOLUNTARINESS

Bergeron focuses on the statement he gave to the detective from Menomonee Falls who questioned him in Kentucky. He argues that the statement fails the test for voluntariness because it was the product of coercive means and improper pressures exercised by the police. *See State v. Clappes,* 136 Wis. 2d 222, 235–36, 401 N.W.2d 759, 765 (1987). In particular, he asserts that the prison setting in which he was questioned was inherently coercive because the prison environment adversely affects an inmate's will by stripping him of his freedom to choose.

Bergeron asserts that the coercion was reinforced because the interrogation room was small and two law enforcement officials were present for most of the interview. Additionally, Bergeron claims coercion is shown because the detective did not notify him ahead of time that he would be interviewed. He also asserts that his statement was largely based upon information and facts the detective supplied to him. Finally, Bergeron argues

that the statement informing him he had a right to an attorney was purely academic since the interview was conducted on a Sunday when he could not retain an attorney.

We review this constitutional issue *de novo,* without deference to the trial court. *See State v. Woods,* 117 Wis. 2d 701, 715, 345 N.W.2d 457, 465 (1984). The threshold inquiry for determining the voluntariness of a confession is whether there is some objective evidence of police misconduct or coercion. *See Clappes,* 136 Wis. 2d at 239-40, 401 N.W.2d at 767. We conclude that there was no police misconduct or coercion in the questioning of Bergeron.

The police made no threats or promises to Bergeron. The questioning took place in familiar surroundings since he was a prison inmate. As the state notes, this is less coercive than taking a person from home to a police station for questioning. There is no evidence that the police deprived Bergeron of any necessity during the questioning. He was advised of his rights using the standard form. Only one officer conducted the interview. The second officer was not even present in the interview room during part of the hour of questioning. The only information the detective supplied to Bergeron for the statement was the exact date of the offense and the first name of Bergeron's boss at the carnival. There is no requirement for police to give a suspect advance notice before questioning. Bergeron indicated no desire to have an attorney present after he was advised of his rights. Nor is there any record of an unsuccessful attempt to reach an attorney.

The trial court properly found that Bergeron's statement was voluntary.

## MULTIPLICITY

Bergeron argues that the charges and the sentences were multiplicitous, thus violating the double jeopardy provisions of the state and federal constitutions. This also is a question of law that we review *de novo. See Woods,* 117 Wis. 2d at 715, 345 N.W.2d at 465. There is a two-pronged test for determining multiplicity: first is whether the charges are identical in law and fact; second is the legislative intent as to the allowable unit of prosecution under the statute in question. *State v. Rabe,* 96 Wis. 2d 48, 63, 291 N.W.2d 809, 816 (1980).

In applying the first prong of the multiplicity test, we conclude that the five charges against Bergeron are identical in law because each count alleges an act prohibited by sec. 940.225(2)(a), Stats. Thus, the question of whether the charges allege one offense or five offenses will turn on whether they are identical in fact. *See Rabe,* 96 Wis. 2d at 63, 291 N.W.2d at 816.

Bergeron uses the methodology for sexual assault cases developed in *Harrell v. State,* 88 Wis. 2d 546, 556-57, 277 N.W.2d 462, 465-66 (Ct. App. 1979), to argue that the charges are identical in fact because his crime involved one continuing course of conduct which could not be sufficiently distinguished into five offenses to justify five separate and distinct charges.

We conclude that Bergeron's arguments are similar to those that failed in *State v. Eisch,* 96 Wis. 2d 25, 291 N.W.2d 800 (1980), and *Eisch* is controlling. The five charges are not identical in fact because each count requires proof of a significant evidentiary fact not required or pertinent to proof of the other counts. *See id.* at 30, 291 N.W.2d at 803. The acts of nonconsensual vaginal intercourse, fellatio, and cunnilingus are separately enumerated in sec. 940.225(5)(c), Stats., as types

of second-degree sexual assault that are different in nature and character. *See Eisch,* 96 Wis. 2d at 34–35, 291 N.W.2d at 805. Moreover, nonconsensual touching of the breasts and vagina when intended for the defendant's sexual arousal constitutes "sexual contact" with separate intimate body parts of the victim. Such acts are prohibited by sec. 940.225(2)(a) and (5)(b), Stats.

Each of the five charges covered a separate volitional act involving a new volitional departure in Bergeron's course of conduct. *See Eisch,* 96 Wis. 2d at 36, 291 N.W.2d at 805. Where there is a separate volitional act, there is a basis for a separate charge. *See id.* As evidence of separate volitional acts, we note that Bergeron performed each prohibited sexual act more than once, he had two ejaculations of semen, he ordered S.S. to change her position several times, and he stopped to remove his pants after several acts of sexual assault.

Having concluded that the five charges against Bergeron are not multiplicitous because Bergeron committed five offenses, we turn now to a consideration of whether the legislature intended separate punishments for the five offenses. We note that this is not a case involving lesser included offenses because all five offenses constitute second-degree sexual assault prohibited by the same statute. Bergeron argues that the legislature could not have intended forty-eight years of consecutive punishment for this sexual assault because the legislature has prescribed less punishment for other crimes of comparable or greater seriousness, such as twenty years for second-degree intentional homicide under sec. 940.05, Stats.

Where a statute intends to protect multiple and varied interests of the victim and the public, multiple

punishments are appropriate. *State v. Wolske,* 143 Wis. 2d 175, 184, 420 N.W.2d 60, 63 (Ct. App. 1988). Moreover, where the evidence shows the defendant committed separate volitional acts, it is appropriate to punish the defendant separately for each offense. *See State v. Tappa,* 127 Wis. 2d 155, 170, 378 N.W.2d 883, 889–90 (1985). In a sexual assault involving multiple offenses, there are multiple denigrations of the victim's integrity and multiple threats to the victim's safety. *See Harrell,* 88 Wis. 2d at 565, 277 N.W.2d at 469. Thus, we conclude that the legislature intended to allow separate punishments for each offense legitimately charged under sec. 940.225(2)(a), Stats.

*By the Court.*—Judgment affirmed.