Robert PEPLINSKI, Plaintiff-Appellant-Petitioner,

v.

FOBE'S ROOFING, INC., a Wisconsin corporation and CNA Insurance, a foreign insurance corporation, Defendants-Respondents.

Supreme Court

*No. 93–0568. Oral argument January 24, 1995.—Decided May 12, 1995.*

(Also reported in 531 N.W.2d 597.)

9

For the plaintiff-appellant-petitioner there were briefs by *Vincent A. Maeder, Jerome A. Maeder* and *Jerome A. Maeder, S.C.,* Wausau and oral argument by *Jerome A. Maeder & Vincent A. Maeder.*

For the defendants-respondents there was a brief by *Mark P. Wendorff* and *Patterson, Richards, Hessert, Wendorff & Ellison,* Wausau and oral argument by *Mark P. Wendorff.*

WILCOX, J.   This case involves review of a published decision of the court of appeals which affirmed a decision of the circuit court for Portage County, Honorable John V. Finn, Judge. *See Peplinski v. Fobe's Roofing, Inc.,* 186 Wis. 2d 308, 519 N.W.2d 346 (Ct. App. 1994). The court of appeals affirmed a judgment entered on a jury verdict finding that Fobe's Roofing, Inc. was not negligent in a work-related accident in which Robert Peplinski was injured. On review, we consider the following issues:

(1)   What is the appropriate standard for reviewing the question of whether a *res ipsa loquitur* jury instruction should have been given by the circuit court?;

(2)   Did the circuit court err by not granting Peplinski's request for a *res ipsa loquitur* jury instruction?;

(3)   Did the circuit court err in denying Peplinski's request for jury instructions relating to "lookout," "management and control," and the specific duties of Fobe's Roofing to Peplinski pursuant to a modified version of WIS JI—CIVIL 1022.2 and 1022.4?

10

The court of appeals concluded that the circuit court made no errors in regard to the jury instructions. *See Id.* at 314–22, 519 N.W.2d at 348–51. We affirm.

On July 6, 1990, Robert Peplinski was working as a plumber for Kohl's Plumbing and Heating, Inc. on a project at the University of Wisconsin-Stevens Point. During the course of his work installing a toilet, a large cast iron pipe fell from the rafters of the ceiling onto Peplinski's hand, causing severe injuries. Several weeks earlier, Peplinski had installed the pipe in such a manner that a portion extended through the ceiling. To accomplish this task, he had bolted "unistruts" to the pipe and laid them across the joists in the rafters of the ceiling. The unistruts rested on the bottom of the ceiling rafters but were not clamped or wired to them. Thus, for the pipe to fall, the unistruts had to move off of the bottom of the ceiling rafters.

Following its fall from the ceiling rafters, the pipe was discarded as construction refuse. Consequently, no detailed inspection was able to be made of the pipe. Further, precise measurements of the size of the hole in the ceiling, the length of the unistrut, and the length of the pipe extending beyond the ceiling were not obtained. Measurements for these items were contested by the parties at trial. Uncontested, however, is the fact that between the time Peplinski installed the pipe and the accident, masons constructed a concrete block wall that extended from the floor to the bottom of the roof deck in the area of the unistruts holding up the pipe. Also undisputed is the fact that Fobe's Roofing was working on the roof at the time of the incident and had in its control a motorized cart that carried materials across the roof.

Peplinski subsequently brought an action against Fobe's Roofing asserting that its negligence was the

11

cause of his injuries. In October 1992, a jury trial was held on the matter. During the proposed jury instruction conference Peplinski asked the circuit court to include a *res ipsa loquitur* instruction. The circuit court declined:

> With respect to Res Ipsa, the court rules that, or is ruling that instruction should not be given because the plaintiff's theory is a specific act of negligence of the employee of the defendant, that is the hitting of the stack pipe on the roof of this building by a defendant's employee. There is no evidence in the record of some other type of negligent conduct on the part of the defendant, and . . . I think that the Supreme Court has stated that the Res Ipsa instruction should not be given in a circumstance where the plaintiff has proven, submitted substantial proof in support of the plaintiff's theory that it was a specific act of negligence on the part of the defendant, rather than a Res Ipsa situation where no specific act of negligence is proven.

The circuit court also denied Peplinski's request for the following jury instructions specifying the duty and liability of Fobe's Roofing: (1) a modified and combined WIS JI—CIVIL 1055, "Lookout"; and WIS JI—CIVIL 1105, "Management and Control"; and (2) a modified and combined version of WIS JI—CIVIL 1022.2 and 1022.4, "Negligence of General Contractor: Increasing Risk of Injury to Employee of Subcontractor" and "Negligence: Contractor." Instead, the circuit court gave the jury the general negligence instruction as to both parties. The circuit court also gave the jury an instruction relating to the duty of a contractor, WIS JI—CIVIL 1022.4.

The jury returned a verdict finding no negligence on the part of either Peplinski or Fobe's Roofing. Following motions after verdict, judgment was entered on

the verdict in favor of Fobe's Roofing dismissing Peplinski's complaint "on the merits, with prejudice, together with costs and disbursements of this action." Peplinski appealed to the court of appeals which affirmed the circuit court in all respects. Peplinski filed a petition for review which was granted. Further facts necessary for a resolution of the case are set forth below.

This case requires us to revisit the troubling question of what the appropriate standard of review[1] is when considering whether the evidence adduced at trial is sufficient for the circuit court to give a *res ipsa loquitur* instruction to the jury. The parties point out that this issue has been raised previously in both the court of appeals and the supreme court and there is, to say the least, inconsistency of opinion. Our task then is to trace and clarify the law on the issue.

The doctrine of *res ipsa loquitur* has long been a part of Wisconsin jurisprudence. For example, in *Weggeman v. Seven-Up Bottling Co.,* 5 Wis. 2d 503, 509, 93

---

[1] One commentator has noted the following general principles regarding the concept of a standard of review:

> A standard of review is "a limiting mechanism which defines an appellate court's scope of review," and hence its power. However, standard of review is far easier to describe than to define. Metaphorically, it sets the height of the hurdles over which an appellant must leap in order to prevail on appeal.... "[Standards of review] indicate the decibel level at which the appellate advocate play to catch the judicial ear." On a more literal level, standards of review are measures of the degree of deference that appellate courts must pay to lower tribunals, most notably trial courts. In so allocating deference, these standards define the allocation of power between the trial and appellate courts.

Ronald R. Hofer, *Standards of Review—Looking Beyond the Labels,* 74 MARQ. L. REV. 231, 232 (1991).

N.W.2d 467, 472 (1958), we noted that the procedural effect of *res ipsa loquitur* in Wisconsin is that of a permissible inference rather than a rebuttable presumption. Further, in *Ryan v. Zweck-Wollenberg Co.,* 266 Wis. 630, 649, 64 N.W.2d 226, 231 (1954), we explained that three elements must be present before the application of the doctrine is appropriate: (1) the accident must be of a kind that ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.[2] Interestingly, however, not until 1963 did this court specifically address the question of what standard should be utilized when reviewing a circuit court's ruling as to the grant or denial of a *res ipsa loquitur* jury instruction.

In *Fehrman v. Smirl,* 20 Wis. 2d 1, 121 N.W.2d 255 (1963) (*Fehrman I*), the plaintiffs appealed a decision by the circuit court to deny them the benefit of a *res ipsa loquitur* instruction. This court concluded that "[b]ecause of the errors which occurred in the rulings on evidence, and in the instructions, and because we deem plaintiffs were entitled to a proper *res ipsa loquitur* instruction, we think it probable that justice may have miscarried. . . . [and] order a new trial . . .." *Id.* at 28, 121 N.W.2d at 269. Of more importance here is the fact that on motion for rehearing we explained: "[w]hether the evidence presented warrants the giving

[2] This third element, of course, no longer presents a bar to the application of the *res ipsa loquitur* doctrine because our state has accepted the concept of comparative negligence. *See Turtenwald v. Aetna Casualty & Surety Co.,* 55 Wis. 2d 659, 665, 201 N.W.2d 1, 4–5 (1972); *Welch v. Neisius,* 35 Wis. 2d 682, 687, 151 N.W.2d 735, 737 (1967).

14

of a *res ipsa loquitur* instruction always presents a question of law for the trial court to pass on." *Id.* at 28b, 122 N.W.2d at 439. Peplinski contends that based on the doctrine of *stare decisis,* this first pronouncement concerning the applicable standard of review should control, i.e., the standard of review should be *de novo* because we declared that whether the evidence warrants the giving of a *res ipsa loquitur* instruction "always presents a question of law."

One year after *Fehrman I,* this court revisited the *res ipsa loquitur* issue in *Fehrman v. Smirl,* 25 Wis. 2d 645, 131 N.W.2d 314 (1964) (*Fehrman II*). In reviewing the decision of the circuit court to give an instruction on *res ipsa loquitur,* we stated:

> When proof of negligence is offered, the trial judge, in contemplating the instructions which he will give to the jury, must evaluate the testimony to determine if there has been such substantial proof of negligence as to render superfluous the giving of an instruction on *res ipsa loquitur.* Sometimes the question as to the adequacy of the proof of negligence will be a close one; *it will be within the sound discretion of the trial judge to determine whether the giving of the instruction will be redundant.*
>
> . . ..
>
> In any event, in the instant case, *it was not an abuse of discretion for the trial court to have given the res ipsa loquitur instruction.*

*Id.* at 653, 131 N.W.2d at 318 (emphasis added). Thus, just one year after *Fehrman I,* this court apparently changed course on the applicable standard of review for rulings concerning a *res ipsa loquitur* instruction.

Subsequent to *Fehrman I* and *Fehrman II,* several cases have been decided wherein the issue of the standard of review for *res ipsa loquitur* instructions has

been considered either directly or indirectly by this court. These cases, while not split equally on the issue, express views adopting both a *de novo* and erroneous exercise of discretion standard of review. For example, in *Kelly v. Hartford Casualty Ins. Co.,* 86 Wis. 2d 129, 139, 271 N.W.2d 676, 681 (1978), this court stated that "[t]he determination of whether to submit a *res ipsa loquitur* instruction is a question of law to be decided by the court." In contrast, this court has noted that "[i]n some cases the adequacy of the proof is a close question and in those instances giving the instruction rests within the sound discretion of the trial court." *Turtenwald v. Aetna Casualty & Surety Co.,* 55 Wis. 2d 659, 667, 201 N.W.2d 1, 5–6 (1972).

Adding to the confusion, the court of appeals has entered the fray with conclusions that both the *de novo* and discretionary standards are applicable in reviewing the grant or denial of a *res ipsa loquitur* instruction. For instance, in *Lecander v. Billmeyer,* 171 Wis. 2d 593, 602, 492 N.W.2d 167, 171 (1992), the court of appeals stated "[g]iving of the *res ipsa loquitur* instruction in general is a question of law, which this court reviews independently." *See also Fiumefreddo v. McLean,* 174 Wis. 2d 10, 17, 496 N.W.2d 226, 228 (1993) (whether the conditions for a *res ipsa loquitur* instruction are met is a legal issue decided *de novo*). However, the court of appeals has also explained that "we give deference to the trial court's discretionary determination that the evidence offers a full and complete explanation of the event." *Ollman v. Wisconsin Health Care Liability Ins.,* 178 Wis. 2d 648, 656, 505 N.W.2d 399, 401 (1993).

16

One thing that is clear and which the parties do not dispute is that the *res ipsa loquitur* instruction should be given when:

> (a) either a laymen is able to determine as a matter of common knowledge or an expert testifies that the result which occurred does not ordinarily occur in the absence of negligence, (b) the agent or instrumentality causing the harm was within the exclusive control of the defendant, and (c) the evidence offered is sufficient to remove the causation question from the realm of conjecture, but not so substantial that it provides a full and complete explanation of the event.

*Lecander,* 171 Wis. 2d at 601–02, 492 N.W.2d at 170–71. The third "element" of this standard was fleshed out in *Turtenwald,* 55 Wis. 2d at 668, 201 N.W.2d at 6, wherein we noted:

> [W]hen both parties have rested and a negligence case is ready for the jury, either of two conditions may exist which would render it error to give the *res ipsa loquitur* instruction. The first occurs when the plaintiff has proved too little—that is, if there has been no evidence which would remove the causation question from the realm of conjecture and placed it within the realm of permissible inferences. The second situation where it is also error occurs when the plaintiff's evidence in a given case has been so substantial that it provides a full and complete explanation of the event if the jury chooses to accept it. In that case the cause is no longer unknown and the instruction will be superfluous and erroneous. However, a middle ground exists between these two extremes where the instruction will still be proper.

17

Professor Prosser describes this situation as follows:

> ". . . the introduction of some evidence which tends to show specific acts of negligence on the part of the defendant, but which does not purport to furnish a full and complete explanation of the occurrence does not destroy the inferences which are consistent with the evidence, and so does not deprive the plaintiff of the benefit of res ipsa loquitur."

In the present case, the court of appeals attempted to "harmonize" the confusion regarding the standard of review question. The court noted that when discussing the first two requirements for the granting of a *res ipsa loquitur* instruction—"instrumentality in exclusive control of defendant" and "result does not occur in the absence of negligence"—courts generally utilize a *de novo* standard of review. *Peplinski,* 186 Wis. 2d at 316, 519 N.W.2d at 349. "This is true, we believe, because once the facts of a case are known, whether the facts fulfill a statutory or common-law standard is a question of law." *Id.* The court explained, however, that the third element—whether the evidence is insufficient or full and complete—must be considered on a "sliding scale" and, therefore, is within the sound discretion of the circuit court.

> The impression of a witness's testimony which the trial court gains from seeing and hearing the witness can make a difference in a decision that evidence is more than conjecture, but less than full and complete. We believe that this was what the supreme court was referring to in *Fehrman II* when it noted that in close cases, the adequacy of the proof will be within the sound discretion of the trial judge.

*Id.* at 317, 519 N.W.2d at 349.

18

Although not quite as simple as portrayed by the court of appeals, we agree in large part with its "harmonization" of the case law. We conclude that the first two requirements necessary for the granting of a *res ipsa loquitur* jury instruction are mixed questions of fact and law. Thus, in reviewing a determination on either of these requirements, the appellate court must first consider whether the factual findings were clearly erroneous. The appellate court then must consider whether these facts, as a matter of law, fulfill the applicable legal standard. One commentator has noted the following concerning mixed questions of fact and law:

> A mixed question of fact and law is one with both factual (i.e., deferential) and legal (i.e., nondeferential) components. The first question to be answered in a mixed question is "what, in fact actually happened . . .." To the extent that this determination is contingent upon the trial court's better position, it is deferred to. The second question is "whether those facts, as a matter of law, have meaning as a particular legal concept." No deference is afforded to this trial court determination. Conceptually, the "facts" referred to in the second question must be understood as facts as found by the trial court. Viewed in that light, the mixed question standard becomes clear from a functional approach: that part of the trial court's determination which depended upon the trial court's better position is deferred to. But the application of that part to an objectified standard of law is an exercise not entirely dependent upon the experience of the trial court, and therefore may be done as well by the appellate court.

19

Ronald R. Hofer, *Standards of Review—Looking Beyond the Labels,* 74 MARQ. L. REV. 231, 243–44 (1991) (footnotes omitted).

■

The third element is somewhat nebulous and requires the circuit court to make a determination following a careful weighing of the evidence. Because the circuit court is in a better position to consider the evidence, and has the benefit of being present to hear and observe the witnesses at trial, the question of whether "too much" or "too little" evidence has been proffered by the plaintiff is discretionary in nature and should be reviewed utilizing an erroneous exercise of discretion standard. Under this standard, the circuit court's determination will be upheld on appeal if it is a reasonable conclusion, based upon a consideration of the appropriate law and facts of record. *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20–21 (1981). Discretion is not synonymous with decision making; rather, it contemplates a process of reasoning from facts of record and reasonable inferences from them. *McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d 512, 519 (1971). While the basis for an exercise of discretion should be set forth in the record, it will be upheld if the appellate court can find facts of record which would support the circuit court's decision. *Maier Construction, Inc. v. Ryan,* 81 Wis. 2d 463, 473, 260 N.W.2d 700, 704 (1978).

With these considerations in mind, we turn now to the present case. The circuit court, in its ruling denying Peplinski's request for a jury instruction on *res ipsa loquitur,* made no reference to the first two requirements of the doctrine. Instead, it determined that Peplinski had proved too much on the issue of causation and had essentially offered a full explanation of

how the accident occurred. Our task is to determine whether the circuit court properly exercised its discretion in reaching this decision.

During trial, Peplinski offered the following theory concerning causation: Patrick Slaughter, an employee of Fobe's Roofing, struck the stack pipe while driving a motorized cart carrying roofing materials and this caused the pipe to fall and injure Peplinski's hand. This theory was presented through the adverse examination of Slaughter and the expert testimony of engineer Charles Hagberg.

On cross-examination, Slaughter admitted that he alone drove the cart back and forth on the roof deck past the pipe that morning. He admitted he was the only roofer in the area of the pipe at 8:30 a.m. when the accident occurred.[3] Slaughter admitted that the cart and its trailer were quite heavy when filled with roofing materials such as asphalt. He also admitted that there was sufficient room on the roof deck to drive the cart around without striking the pipe. Further, as evidenced by the following colloquy, Slaughter denied having struck the pipe at any time:

|  |  |
|---|---|
| Attorney Maeder: | Mr. Slaughter, to be perfectly frank with us, you made a mistake when you hit it, and you made a mistake when you denied it, didn't you? |
| Mr. Slaughter: | No, sir. |

Engineer Hagberg, Peplinski's liability expert, testified that the force needed to knock the unistrut off the

---

[3] The record is devoid of any testimony demonstrating that any other equipment was near the pipe on the roof deck except the cart operated by Slaughter.

rafters, thereby causing the pipe to fall, was a strong lateral force. The force must have been parallel to the roof deck and been a "sharp heavy blow." When asked if a motorized cart like that driven by Slaughter could have caused the accident Hagberg replied: "Yes, that would be the type of a thing that could do it. With hot tar in it and the lugger and the rider, you'd have somewhere around 450, 500 pounds, and if that's going along at a pretty good walking speed, that would be about the force to strike it." After implicating the cart, Hagberg eliminated job site vibration and chance contact as causes of the pipe's fall.

Hagberg also criticized Slaughter's operation of the motorized cart. He testified that there was fourteen feet of clearance on one side of the pipe and seventeen feet of clearance on the other side and that there was no reason for the cart, which was capable of serious damage, to be close to the pipe. Finally, he testified that striking the pipe did not "comply with good safety practice," was a "preventable accident," and could have been prevented by "ordinary care of staying away from the pipe."

■

As noted above, the circuit court explained that an instruction as to *res ipsa loquitur* "should not be given because the plaintiff's theory is a specific act of negligence of the employee of the defendant, that is the hitting of the stack pipe on the roof of this building by a defendant's employee. There is no evidence in the record of some other type of negligent conduct on the part of the defendant." We conclude that the circuit court's ruling was not an erroneous exercise of discretion. The determination was a reasonable conclusion, derived through a process of reasoning that clearly considered the appropriate law and facts of record. Quite

22

simply, Peplinski offered extensive evidence on one, and only one, theory of causation—Slaughter ran into the pipe while operating the motorized cart. The proffered evidence, including both the cross-examination testimony of Slaughter and the expert testimony of Hagberg, offered a complete explanation of the incident and, therefore, an instruction on *res ipsa loquitur* would have been superfluous[4]

This case is analogous to *Utica Mutual Ins. Co. v. Ripon Cooperative,* 50 Wis. 2d 431, 440, 184 N.W.2d 65, 69 (1971), where this court concluded that it was inappropriate to give a *res ipsa loquitur* instruction where "[t]he respondent's expert offered an opinion on exactly where, how and why the [incident] occurred." *See also Mixis v. Wisconsin Public Service Co.,* 26 Wis. 2d 488, 498, 132 N.W.2d 769, 773–74 (1965) (holding that it was error to give an unqualified *res ipsa loquitur* instruction where plaintiff asserted a specific theory of causation); *Lecander,* 171 Wis. 2d at 604, 492 N.W.2d at 171 (*res ipsa loquitur* instruction superfluous where plaintiff's experts pointed to a specific event that explained the incident in question).

We turn next to Peplinski's contention that the circuit court erred in denying his request for jury instructions relative to "lookout," "management and control," and the duty of Fobe's employees to Peplinski pursuant to a modified version of WIS JI—CIVIL 1022.2 and 1022.4. This court has noted the following concern-

---

[4] Because we conclude that the circuit court's ruling as to the *res ipsa loquitur* instruction was correct based on the "too much evidence, too little evidence" consideration, we need not address the first two requirements for the doctrine's applicability.

ing an allegation that a circuit court's instructions misstated the law and misled the jury:

> The trial court has broad discretion when instructing the jury. A challenge to an allegedly erroneous jury instruction warrants reversal and a new trial only if the error was prejudicial. An error is prejudicial if it probably and not merely possibly misled the jury. If the overall meaning communicated by the instructions was a correct statement of the law, no grounds for reversal exist.

*Fischer v. Ganju,* 168 Wis. 2d 834, 849–50, 485 N.W.2d 10, 16 (1992) (citations omitted); *see also Nelson v. Taff,* 175 Wis. 2d 178, 186, 499 N.W.2d 685, 688 (Ct. App. 1993) ("trial court has wide discretion in instructing a jury, and if its instructions adequately cover the law, there is no erroneous exercise of discretion when the court refuses to give a requested instruction, even if the proposed instruction is correct").

Peplinski first argues that instructing "the jury as to 'lookout' and 'management and control' as to the operator of the motorized cart was appropriate for the theory . . . that the cart operator negligently hit the pipe with his motorized cart." He asserts that the operation of a motorized cart is similar and analogous to the operation of an automobile and, therefore, WIS JI—CIVIL 1055 and 1105 should have been given by the circuit court.[5] We agree that the operation and control

---

[5] WIS JI—CIVIL 1055, Lookout, provides:

A driver has a duty to exercise ordinary care to keep a careful lookout ahead and about him or her for the presence or movement of other vehicles, objects, or pedestrians that may be within or approaching the driver's course of travel. In addition, the driver has the duty [to use ordinary care] to lookout for the condition of the highway ahead and for traffic signs, markers, obstructions to vision, and other things that might warn of possible danger.

of a motorized cart *may* be similar to an automobile. Thus, instructions to the jury as to lookout and management and control may have been appropriate in a case such as the one at hand. However, even assuming that Peplinski offered enough evidence to prove the cart's similarity with an automobile, the failure to give either instruction is not prejudicial error if the instructions as a whole adequately and properly informed the jury.

As relevant to this issue, the circuit court gave a slightly modified version of WIS JI—CIVIL 1005:

> A person is negligent when he fails to exercise ordinary care. Ordinary care is the degree of care which the great mass of mankind ordinarily exercises under the same or similar circumstances. A person fails to exercise ordinary care when, without intending to do any wrong, he does an act or omits a precaution under circumstances in which a person of ordinary intelligence and prudence ought reasonably to foresee that such act or omission will subject him or his property, or the person or property of another, to an unreasonable risk of injury or damage.

To satisfy this duty of lookout, the driver must use ordinary care to make observations from a point where the driver's observations would be effective to avoid the accident. Additionally, having made the observation, the driver must then exercise reasonable judgment in calculating the position or movement of persons, vehicles, or other objects.

WIS JI—CIVIL 1105, Management and Control, provides:

A driver must exercise ordinary care to keep his or her vehicle under proper management and control so that when danger appears, the driver may stop the vehicle, reduce speed, change course, or take other proper means to avoid injury or damage.

25

The court also gave a modified version of WIS JI—CIVIL 1022.4:

> A contractor has a duty to exercise ordinary care in the construction of a building. This duty requires such contractor to perform work with the same degree of care and skill and to provide such suitable materials as are used and provided by contractors of reasonable prudence, skill, and judgment in similar construction.

Peplinski asserts that these two instructions did not adequately cover the law, and the failure to give the requested instructions was prejudicial error. Besides these two conclusory allegations, however, Peplinski provides no specific reasons as to why the failure to give these instructions was prejudicial error. Our review reveals that by giving WIS JI—CIVIL 1005 and 1022.4, the circuit court recognized that the case required an instruction on negligence as well as an instruction on the duty of Peplinski and Fobe's Roofing as contractors. WIS JI—CIVIL 1005 explains that where a person does not exercise ordinary care, he or she is negligent. WIS JI—CIVIL 1022.4 provides that a contractor, in constructing a building, has a duty to exercise ordinary care. These two instructions adequately covered the law in the present case. Further, one cannot reasonably conclude that these instructions somehow misled the jury. We conclude that the circuit court did not erroneously exercise its discretion when it chose not to include WIS JI—CIVIL 1055 and 1105 as instructions to the jury.

■

Peplinski next argues that the circuit court erred in failing to give a proposed version of WIS JI—CIVIL 1022.2 and 1022.4 dealing with the specific duty as to

the employees of Fobe's Roofing. The proposed instruction states:

> A contractor and his employees who are performing work on a building project [have] a duty not to do an affirmative act that would increase the risk of injury or to do an act that injures the employees of another contractor on the same project. In this case Fobe[']s employees had an affirmative duty to exercise reasonable care to not do an act or acts that would contribute to an injury of other persons on the same job. The failure to exercise such care, if you so find, is negligence.

Peplinski, citing *Fischer,* 168 Wis. 2d at 849, 485 N.W.2d at 16, posits that "[b]ecause the jury received specific instructions as to Robert Peplinski's duty, but not as to the respondents' duty, a new trial is necessary to give Robert Peplinski a fair trial." Without passing on the merits of Peplinski's proposed instruction, we conclude that the instructions actually given by the circuit court adequately and properly instructed the jury as to the question of duty for the employees of Fobe's Roofing. As noted above, the court instructed the jury with a modified version of WIS JI—CIVIL 1022.4. The instruction explains that a contractor has a duty to exercise ordinary care in constructing a building. This duty requires that the performance of the work at hand, in terms of degree of care and skill, be on par with other contractors similarly situated in the construction business. Simply put, it was not an erroneous exercise of discretion for the circuit court to have refused to give Peplinski's requested instruction on contractor duty.

Finally, Peplinski argues that the circuit court erred in giving WIS JI—CIVIL 1022.4 because it spoke

27

only to his duty, not Fobe's Roofing, thus creating "an anti-plaintiff atmosphere." Specifically, Peplinski asserts that WIS JI—CIVIL 1022.4 "only applies to negligent construction and does not apply to personal injuries caused by such negligent construction." We do not read the instruction so narrowly. On the contrary, our review of the instruction leads us to conclude that it is sufficiently broad to encompass personal injuries caused by a contractor. While several of the cases cited in the Comments to WIS JI—CIVIL 1022.4 generally discuss liability for property damages caused by defective construction, that does not preclude its applicability for personal injury damages. *See, e.g., Colton v. Foulkes,* 259 Wis. 142, 47 N.W.2d 901 (1951) (personal injury action holding that building contractor may be negligent in using materials in which a contractor of reasonable prudence, skill and judgment would know were defective). The instruction's mandate that a contractor perform the work at hand with an appropriate "degree of care," i.e., in a careful or vigilant manner, indicates that it may be utilized in personal injury actions as well as property damage actions.

Here, WIS JI—CIVIL 1022.4 had the dual effect of explaining that Peplinski had a duty to exercise reasonable care in installing the pipe assembly and that the employees of Fobe's Roofing had a duty to exercise reasonable care in performing their roofing tasks. Despite Peplinski's arguments to the contrary, we do not believe the giving of this instruction somehow created "an anti-plaintiff atmosphere." Because this instruction correctly stated the law and adequately informed the jury on the issue, we conclude that it was not an erroneous exercise of discretion for the circuit

28

court to refuse a "balancing" instruction as to the specific duties of Fobe's Roofing.

*By the Court.*—The decision of the court of appeals is affirmed.