TURTENWALD, Respondent, v. AETNA CASUALTY & SURETY COMPANY and others, Appellants.

*No. 176. Argued September 5, 1972.—Decided October 3, 1972.*
(Also reported in 201 N. W. 2d 1.)

---

[13] *Id.*

664

For the appellants there was a brief by *Borgelt, Powell, Peterson & Frauen,* attorneys, and *Donald R. Peterson* of counsel, all of Milwaukee, and oral argument by *Donald R. Peterson.*

For the respondent there was a brief by *Merten, Connell & Sisolak,* attorneys, and *James G. Sisolak* of counsel, all of Milwaukee, and oral argument by *James G. Sisolak.*

BEILFUSS, J. Although not stated precisely in this manner by the parties, the issues are:

1. Was it error to give a *res ipsa loquitur* instruction to the jury?

2. Was it error to strike the testimony of a witness recalled after he said his memory was refreshed?

3. Are the damages excessive?

The following conditions must be present before the doctrine of *res ipsa loquitur* is applicable: (1) The event or accident in question be of the kind which does not ordinarily occur in the absence of someone's negligence; and (2) the agency or instrumentality causing the harm must have been within the exclusive control of the defendant. *Utica Mut. Ins. Co. v. Ripon Cooperative* (1971), 50 Wis. 2d 431, 184 N. W. 2d 65; *Welch v. Neisius* (1967), 35 Wis. 2d 682, 151 N. W. 2d 735; and *Turk v. H. C. Prange Co.* (1963), 18 Wis. 2d 547, 119 N. W. 2d 365. This court has held that a third element which is required in other states—that ". . . it must not have been due to any voluntary action or contribution on the part of the plaintiff," is not a bar to the application of this doctrine. The reason is that Wisconsin is a comparative negligence state. *Welch v. Neisius, supra,* page 687.

The defendants-appellants contend that the instrumentality was not in the exclusive control of defendant Konieczny. We believe the evidence establishes that

Konieczny was the only one in the truck and he, exclusively, handled all of the parts which were moved therein to the trailer door. True, the Humphrey employees helped to unload, but only to the extent of taking the parts set at the door and then bringing them into the parts department. There was testimony that right after the accident Konieczny jumped from the truck and no one else was in the truck nor seen leaving it at that time. As we stated in *Welch v. Neisius, supra,* the right to exclusive control must be read to mean that the defendant at the times material did in fact exercise exclusive control over the instrumentality. This is the situation here. The evidence shows that at the time of the accident Konieczny was in exclusive control of the instrumentality (the cylinder) because he was the only one who had been in the trailer or was in the trailer when the cylinder came out, striking Turtenwald.

This is the type of accident that does not ordinarily occur without someone's negligence. In a matter of seconds a 100-pound cylinder came out of the trailer's west door striking the respondent who stood not less than five feet away. There was no evidence proffered by defendants-appellants that the accident could have happened without someone's negligence. In fact, the only defense suggested was that Turtenwald caused the accident, not Konieczny.

It is argued that expert testimony is needed to explain how a cylinder weighing 70 to 300 pounds can fly from the flatbed of a trailer five to 10 feet if not thrown by Konieczny. The facts of this case show that expert testimony is not needed. First, because the cylinder weighed only about 100 pounds,[2] and second there was an admission by Konieczny that he could have

---

[2] The only evidence that would indicate the cylinder weighed 300 pounds was in connection with medical history given by one of the medical witnesses. This evidence is not of sufficient weight to overcome the testimony of the several witnesses who saw and handled the cylinder and none said it exceeded 100 pounds.

shoved it too far. All that Turtenwald maintains is that it came out of the trailer in some manner caused by Konieczny's negligence. Konieczny, Carpenter and Turtenwald all testified that they did not know exactly how it came out. There is simply nothing complex about this event which would require expert testimony. The jurors would be qualified on the basis of their common human experience to decide whether the event is the kind which does not occur unless someone has been negligent.

Appellants contend that even if the *res ipsa loquitur* doctrine is applicable, the instructions given were erroneous.[3] The reason given is that the instruction should have been limited—that is, so qualified that it would be applicable only if the jury first found the cylinder was not propelled out by Konieczny and then only if it left the trailer by some unknown manner. This contention is based upon the additional contention that the great weight of the plaintiff Turtenwald's proof is that Konieczny either shoved or threw the carton out of the trailer. If the evidence offered shows substantial proof of negligence on the part of the defendants, which if accepted by the jury is a complete explanation of the accident, then giving the *res ipsa loquitur* instruction is superfluous and erroneous. In some cases the adequacy of the proof is a close question and in those instances giving the instruction rests within the sound discretion of the trial court. *Fehrman v. Smirl* (1964), 25 Wis. 2d 645, 131 N. W. 2d 314. However, it is reversible error to give an *unqualified* instruction when the record discloses that the great weight of evidence tends to establish that a specific negligence caused the event in question. *Mixis v. Wisconsin Public Service Co.* (1965), 26 Wis. 2d 488, 132 N. W. 2d 769. The tests to be applied to determine when the doctrine is applicable and when its instruction must be limited therein are set out in

---

[3] The instruction given appears in Wis J I—Civil, Part I, 1145.

*Utica Mut. Ins. Co. v. Ripon Cooperative, supra.* This case basically states that when both parties have rested and a negligence case is ready for the jury, either of two conditions may exist which would render it error to give the *res ipsa loquitur* instruction. The first occurs when the plaintiff has proved too little—that is, if there has been no evidence which would remove the causation question from the realm of conjecture and placed it within the realm of permissible inferences. The second situation where it is also error occurs when the plaintiff's evidence in a given case has been so substantial that it provides a full and complete explanation of the event if the jury chooses to accept it. In that case the cause is no longer unknown and the instruction will be superfluous and erroneous. However, a middle ground exists between these two extremes where the instruction will still be proper. Professor Prosser describes this situation as follows:

". . . the introduction of some evidence which tends to show specific acts of negligence on the part of the defendant, but which does not purport to furnish a full and complete explanation of the occurrence does not destroy the inferences which are consistent with the evidence, and so does not deprive the plaintiff of the benefit of res ipsa loquitur." Prosser, *Law of Torts* (hornbook series, 4th ed.), p. 232, sec. 40; *Utica Mut. Ins. Co. v. Ripon Cooperative, supra;* and *Fehrman v. Smirl, supra.*

The evidence in this case is not substantial because it does not provide a complete explanation of the causal events that transpired. How the accident happened is still unknown. We really only know that Konieczny somehow set these factors into motion and not the manner in which they transpired. The only theory as to the cause which is supported by any evidence is based on Konieczny's admission as stated by Turtenwald, which Konieczny denied making when he testified. The other theories discussed at trial were based on conjecture and speculation.

Other than Konieczny's admission, the evidence only went to establish that he was in exclusive control of the instrumentality and the accident could not have ordinarily happened but for someone's negligence. Therefore this evidence only takes the causation question out of the realm of conjecture and places it in the realm of permissible inferences. Respondent has not proved too little nor too much. It appears that respondent's evidence falls within this middle ground, making the *res ipsa loquitur* instruction proper and it need not be limited. The judge did evaluate the possibility of error in giving this instruction, but after considerable deliberation felt it was proper. We agree.

The defendants-appellants next assign several errors dealing with evidentiary problems which culminate in the alleged erroneous striking of that part of the testimony of the witness Carpenter after he was recalled and stated his memory had been refreshed. We will consider all the alleged errors together.

The plaintiff in this action, Turtenwald, was an employee of Humphrey Chevrolet and as such was entitled to workmen's compensation benefits. The Employers Mutual Insurance Company was the compensation carrier for Humphrey and as such was adverse to Turtenwald until the compensation questions were determined, but was united in interest and not adverse in this action.

About five months after the accident, on September 19, 1968, a Mr. Powers, an adjuster or investigator for Employers Mutual, interviewed Carpenter, who has heretofore been identified as a coemployee and witness to the accident. The interview was electronically recorded but was never transcribed. A few days after the statement was taken, Powers dictated a resumé from his recollections of the interview and also prepared a diagram of the scene, including indications of the positions of Turtenwald and Carpenter in relation to the side door of the trailer.

At the trial, but before Turtenwald rested his case, Mr. Peterson, counsel for the defendants-appellants, called Mr. Nance, an attorney for Employers Mutual, adversely for the purpose of obtaining the statement given by Carpenter to Powers. After objection, the court ruled that Peterson would have to wait until Turtenwald rested his case and that he could examine Nance when defendants-appellants presented their case. Turtenwald rested and Peterson called Nance back to the stand. He asked Nance if he had any notes or statements obtained from Carpenter. Turtenwald's counsel objected and the court stated that if Carpenter was present he should be called first. Peterson then called Carpenter. Carpenter testified to his first version of what happened. At the close of his examination he said that his testimony had been refreshed based on the review of his statement given to Peterson on September 2, 1970, and that the questions asked at trial were very similar to the ones asked in September.

Thereafter Peterson called Mr. Nance back to the stand. Respondent objected and the court told both parties' counsel to come into his chambers to argue the matter. The court then adjourned the case until the next morning. In chambers the court ordered the statements to be turned over to Peterson since they were not going to be introduced as evidence. The next morning, in chambers, before the jury was called, Peterson stated that he obtained the resumé the previous night and it stated that Carpenter said he was only a few feet from Turtenwald rather than 10 feet. Also, that Turtenwald reached into the truck, came out with the cylinder in his hands, and it was in his hands all the way down to the ground when it touched his foot. Peterson also stated that upon discovering the resumé's contents he called Carpenter on the phone and

told Carpenter what it said based on his (Peterson's) own recollection of its contents. He did not read the resumé to Carpenter, nor did Carpenter ever see it himself. Peterson proposed to recall Carpenter to the stand to correct or change his testimony based upon his refreshed memory. (This is the second time Carpenter refreshed his memory from prior statements.) Respondent Turtenwald objected because no foundation was adequately laid to allow the resumé to be used and because it was an attempt to impeach the testimony of his own witness. The court was informed by Mr. Peterson that he refreshed Carpenter's recollection and wanted to correct Carpenter's prior testimony. For this reason the court permitted Peterson to recall Carpenter.

Court reconvened and Carpenter was recalled to testify. Respondent objected. Peterson then asked Carpenter if his memory was refreshed and he said it was. Carpenter then testified that: (1) He was only a few feet from respondent when the accident occurred; and (2) that respondent ". . . had the object in his hands and he followed the object with his hands all the way down to his foot." Note that nothing further was asked by Peterson on direct and that Carpenter did not retestify that he saw respondent take the cylinder out of the truck, carry it and then have his hands on it all the way down to his foot. Carpenter really did not materially change his prior testimony because he could see Turtenwald at 10 feet just as well as a few feet, and he still did not testify that he saw Turtenwald pick up the cylinder and drop it on this foot. On cross-examination Carpenter said his second story was based on what Peterson told him and he believed in Peterson and was taking his word for what he had said. Thereafter Carpenter said that, "If it's my prior statement, then I do remember." The court then stopped the examination. The court stated it was apparent Carpenter's testimony was not based upon

an independent refreshing of his recollection but rather upon what counsel told him. The court could not determine what testimony came from his own independent recollection vis-a-vis what conversation he had with Peterson. The court then struck this testimony and instructed the jury to disregard all of Carpenter's testimony given after he was recalled. Thereafter Peterson was allowed to make his offer of proof in regard to the statement Employers Mutual had taken. He called Mr. Nance to the stand to make this offer of proof. Almost all of Nance's replies were that if the adjuster said so in the resumé then that is correct. There was no proper foundation for this evidence and the court properly sustained an objection to it. After this the jury was ordered to return to the courtroom for its instructions.

As stated above, the court refused to allow counsel for defendants-appellants to obtain the statements from Nance which were given by Carpenter to Employers Mutual until after Carpenter had been called and testified.

The statement taken by a nonlawyer investigator was originally protected and this protection continues unless a proper foundation, good cause, was shown to require its production. Here, there was no cause shown and therefore no foundation, and the court did not commit error in sustaining the objection.

The defendants-appellants also contend it was error to strike the testimony given by Carpenter after he was recalled. We think not. The nature and the extent that a party can recall witnesses to change or correct testimony rests largely in the sound discretion of the trial court.

The quality of the source of information used here in an attempt to refresh the recollection of the witness Carpenter is dubious indeed. Mr. Peterson, counsel for defendants-appellants, did not have a transcript of the

statement. All he had was a written resumé of the four-day old recollections of the person who took the statement. For the purpose of refreshing his memory Carpenter was not given the original statement, he was not given the resumé but only a telephone report by Peterson of what the resumé contained. When Carpenter responded on cross-examination as to whether he remembered, he stated: "If it's my prior statement, then I do remember." The trial court did not abuse its discretion in striking the portion of his testimony given after being recalled. Other evidentiary errors, if any, are not prejudicial.

The defendants-appellants also contend the damage award of $27,500 is excessive. We agree with the trial court—the damages are high but not excessive; further, there is no evidence of perversity, prejudice or passion.

At the time of the accident Turtenwald was a healthy, athletically inclined young man, eighteen years old. At the time of trial he was twenty-one years old with a long life expectancy. His injury was described as a crushed right foot. The big toe was smashed, the next toe badly dislocated and bruised, and the third one broken; and the rest of his foot was badly bruised. He endured considerable severe pain and was hospitalized on two occasions for a total period in excess of six weeks. After the initial repair of the big toe and the other two toes, his leg was placed in a cast for several weeks and he was confined to bed with his foot elevated. It was known that at least a part of his big toe would have to be amputated. Gangrene developed in the big toe, together with its unpleasant odor. He thereafter submitted to two separate surgical procedures and the big toe was amputated at the first joint. After six months he returned to work. He still engaged in some form of athletics but not as much nor as well. He does not go swimming because of the cosmetic appearance of his foot.

The big toe is especially functional in "pushing off" when a person starts to walk; it also has some effect upon one's gait. Turtenwald cannot run as well as he could; he tires easily when walking; and walks on the side of his foot which causes him to wear out his shoes at a rapid rate. The stub of his toe hurts severely when bumped and pains with weather changes.

There is no question but that Turtenwald has a permanent disabling injury. It has not materially diminished his earning capacity but does and will cause him discomfort and restriction of some of his activities for many years to come. The award of $27,500 is high but not excessive.

Finally, we are urged to order a new trial in the interest of justice under sec. 251.09, Stats. We are of the opinion the issues were fairly tried and that justice has not miscarried. Such being the case, we do not order a new trial in the interest of justice.

*By the Court.*—Judgment affirmed.