Robert LECANDER and Gwen Lecander, Plaintiffs-
Appellants,†

v.

Arlene BILLMEYER and Wisconsin Health Care Liability
Insurance Plan, Defendants-Respondents,

MYRTLE WERTH MEDICAL CENTER, Wisconsin Hospital
Association Liability Insurance Plan, Optional Segre-
gated Account, Dr. J.H. Haemmerle, Physicians
Insurance Company of Wisconsin and State of Wiscon-
sin Patient's Compensation Fund, Defendants.

Court of Appeals

*No. 92–0275. Submitted on briefs September 14,
1992.—Decided October 6, 1992.*

(Also reported in 492 N.W.2d 167.)

† Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Russell T. Golla* of *Anderson, Shannon, O'Brien, Rice & Bertz* of Stevens Point.

On behalf of the defendants-respondents, the cause was submitted on the brief of *J. Drew Ryberg* and *Kristina M. Bergerson* of *Kelly & Ryberg, S.C.* of Eau Claire.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Robert and Gwen Lecander appeal the judgment dismissing their claim against Arlene Billmeyer and the Wisconsin Health Care Liability Insurance Plan. The Lecanders assert that the circuit court erred in the following ways: (1) refusing to instruct the jury on the doctrine of res ipsa loquitur, (2) refusing to change the jury's answer on special verdict question no. 1, inquiring into Billmeyer's negligence from "No" to "Yes," (3) refusing to answer special verdict question no. 2 inquiring into the causation of Billmeyer's negligence, "Yes," and (4) denying the Lecanders' motion for a new trial in the interest of justice.

Because the Lecanders have presented evidence that is so substantial that it provides a full and complete explanation of the event if the jury chooses to accept it, the trial court was correct in not giving the res ipsa loquitur instruction. Further, we conclude that the trial court was correct in refusing to change the jury's negli-

gence and causation answers and was correct in denying the Lecanders' motion for a new trial. The judgment is affirmed.

Robert Lecander was scheduled to have surgery on his fractured left shoulder. Prior to surgery, Lecander was given a general anesthetic, and Arlene Billmeyer, a nurse anesthetist, attempted to intubate him. The goal of intubation is to insert a tube through the patient's nose or mouth into the trachea to seal the trachea and protect the airway during surgery. Billmeyer made at least five unsuccessful attempts at intubating Lecander before Lecander's surgery had to be canceled. Billmeyer recalled making at least two visual oral attempts, one blind oral attempt, one blind nasal attempt, and one attempt using a fiberoptic device. At some point in the procedure, which was controlled by Billmeyer alone, Lecander's posterior pharyngeal wall (the back of his throat) was injured.

After he was revived from the anesthetic, Lecander complained of a severe sore throat. His condition worsened in the next few days, and Dr. Daniel Johnson performed a fiberoptic laryngoscopy that revealed acute pharyngitis and a flap of tissue in the posterior pharynx that Johnson concluded was a tear related to traumatic intubation. Ultimately, Dr. James Miettunen performed surgery to repair Lecander's throat. Dr. Miettunen concluded that Lecander had sustained a three-to-four centimeter laceration/perforation to his posterior pharyngeal wall that became infected and gave rise to the development of bilateral subcutaneous cervical emphysema.

Lecander brought a malpractice action against Billmeyer and others.[1] Before trial, Lecander proposed a

---

[1] For the purpose of this appeal, Billmeyer is the only defendant/respondent.

jury instruction based on the res ipsa loquitur doctrine,[2] and Billmeyer brought a motion in limine to exclude any expert evidence consistent with a res ipsa loquitur standard. The circuit court, relying on *Kelly v. Hartford Cas. Ins. Co.*, 86 Wis. 2d 129, 132–33, 271 N.W.2d 676, 678 (1978), ruled that because the procedure was not so well known by lay persons that it permits a jury to infer negligence, he would not allow the res ipsa loquitur instruction. He did however, allow expert testimony supporting a res ipsa argument and reserved his right to give the res ipsa instruction if the evidence changed his opinion.

At trial, both of the Lecanders' experts testified in ways that appeared contradictory. Dr. George Wier, an anesthesiologist, stated to a reasonable degree of medical certainty that a perforation or laceration of the type inflicted on Lecander is an injury that does not usually occur if the anesthesiologist or nurse anesthetist is exercising "good medical care."[3] Dr. Wier however testified

---

[2] "Res ipsa Loquitur" is a latin phrase which means, "the thing speaks for itself." It is the offspring of a casual word of Baron Pollock during argument with counsel in an 1863 English case, *Byrne v. Boadle,* 2 H.&C. 722, 728, 159 Eng.Rep.R. 299 (1863), in which a barrel of flour rolled out of a warehouse window and fell upon a passing pedestrian. In its inception the principle was nothing more than a reasonable conclusion, from the circumstances of an unusual accident, that it was probably the defendant's fault. W. PAGE KEETON, ET AL., PROSSER AND KEETON ON THE LAW OF TORTS, SEC. 39 AT 243 (5TH ED. 1984). The requested instruction based on this doctrine states in part:

If you find that such a laceration or perforation is of a kind that does not ordinarily occur if . . . [a] nurse anesthetist exercises proper care and skill under the circumstances, then you may infer from the fact of the [injury] that Arlene Billmeyer failed to exercise that degree of care and skill which . . . nurse anesthetists usually exercise.

[3] Wier and other experts testified that for the intubation pro-

that the laceration or perforation of Lecander's throat was caused by the blind nasal attempt at intubation, and that Billmeyer used reasonable and appropriate care in her attempts to intubate Lecander with the exception of her attempt using the fiberoptic device, which occurred after the blind nasal attempt.

Another of the Lecanders' experts, Nurse Anesthetist Robert Holmquist testified to a reasonable degree of medical probability that a perforation or laceration of the type suffered by Lecander generally does not occur. Holmquist was critical of Billmeyer's use of the fiberoptic device and her follow-up care. While he stated that the injury to Lecander's throat could have been caused by the laryngoscope blade, by the suctioning or by the blind nasal attempt, he stated that the injury was most probably caused by the blind intubation, and that Billmeyer exercised reasonable and appropriate care through the blind nasal effort.[4]

The contradictions in the testimony stem from the Lecanders' uncertainty regarding the res ipsa loquitur instruction. To obtain this instruction, the Lecanders needed to show that a laceration/perforation of the back of the throat does not ordinarily occur during an intubation in the absence of negligence, and could not allege negligent acts so specific as to remove the case from the realm of res ipsa loquitur. However, if they were unsuccessful in convincing the trial court that the doctrine was applicable, they needed to show through experts that Billmeyer was negligent with regard to specific

cedure, anesthesiologists and nurse anesthetists are held to the same standard of care.

[4]Billmeyer's expert witness, Dr. John Evans, testified that Billmeyer gave reasonable and appropriate care to Lecander in all regards.

acts.[5] As shown below, the Lecanders, in bringing in evidence that the injury probably occurred during the blind nasal intubation, proved too much.

After all the evidence had been presented, the trial court ruled that the nature of this injury is not apparent to the layperson and that the res ipsa instruction should not be given. The jury found Billmeyer not negligent and the Lecanders brought motions after verdict including a motion asking that the failure to give the res ipsa instruction was erroneous and prejudicial. The court denied the motion, mentioning that mere rarity of occurrence was an insufficient basis for a finding of negligence under res ipsa loquitur and that this was not a case where it was apparent to a lay person that undue force had been used in a negligent manner.

The failure to give the res ipsa instruction in a medical malpractice case where the evidence warrants it has been found prejudicial in the past. *See Mercurdo v. County of Milwaukee,* 82 Wis. 2d 781, 785-87, 264 N.W.2d 258, 261-62 (1978). Before a res ipsa loquitur instruction can be given, the evidence must conform to these requirements: (1) The event in question must be of the kind which does not ordinarily occur in the absence of negligence; and (2) the agency or instrumentality causing the harm must have been within the exclusive control of the defendant. *Trogun v. Fruchtman,* 58 Wis. 2d 569, 590, 207 N.W.2d 297, 308 (1973).

---

[5]While neither Wier nor Holmquist testified that Billmeyer was negligent regarding the blind nasal attempt (which they felt probably caused the injury), both were critical of her follow-up care after the laceration/perforation, and her attempt using the fiberoptic device, which occurred after the injury.

The "not ordinarily occurring in the absence of negligence" requirement is met where a layman is able to say as a matter of common knowledge that the consequences of the treatment are not those which ordinarily result if due care is exercised, or where expert testimony so opines. *Fehrman v. Smirl*, 20 Wis. 2d 1, 22, 121 N.W.2d 255, 266 (1963) *(Fehrman I)*. Rarity of an event alone is insufficient to satisfy this requirement. *Id.* at 24–25, 121 N.W.2d at 268.

Proper use of the res ipsa loquitur instruction was clarified in *Turtenwald v. Aetna Casualty & Surety Co.*, 55 Wis. 2d 659, 201 N.W.2d 1 (1972). There, the Wisconsin Supreme Court explained:

> [W]hen both parties have rested and a negligence case is ready for the jury, either of two conditions may exist which would render it error to give the *res ipsa loquitur* instruction. The first occurs when the plaintiff has proved too little—that is, if there has been no evidence which would remove the causation question from the realm of conjecture and placed it within the realm of permissible inferences. The second situation where it is also error occurs when the plaintiff's evidence in a given case has been *so substantial that it provides a full and complete explanation of the event* if the jury chooses to accept it. In that case the cause is no longer unknown and the instruction will be superfluous and erroneous. However, a middle ground exists between these two extremes where the instruction will still be proper.

*Id.* at 668, 201 N.W.2d at 6. (Emphasis supplied.)

Thus, combining these standards, the res ipsa loquitur doctrine should be applied and the instruction given when (a) either a layman is able to determine as a matter

601

of common knowledge or an expert testifies that the result which has occurred does not ordinarily occur in the absence of negligence, (b) the agent or instrumentality causing the harm was within the exclusive control of the defendant, and (c) the evidence offered is sufficient to remove the causation question from the realm of conjecture, but not so substantial that it provides a full and complete explanation of the event.

Giving of the res ipsa loquitur instruction in general is a question of law, which this court reviews independently. *Fehrman I,* 20 Wis. 2d at 28b, 122 N.W.2d at 439 (on motion for rehearing). Moreover, reviewing courts may affirm the circuit court's decision even if the circuit court reached its result for different reasons. *State v. Alles,* 106 Wis. 2d 368, 391–92, 316 N.W.2d 378, 388–89 (1982).

In this medical malpractice action,[6] there was ample expert testimony showing that laceration or perforation of the throat does not usually occur during an attempted intubation in the absence of negligence. It was likewise shown that Billmeyer had exclusive control of all instruments that possibly could have caused the injuries to Lecander's throat.

In ruling on the last requirement needed to give the res ipsa loquitur instruction, appellate courts ordinarily give deference to the trial court's discretionary determination. *Fehrman v. Smirl,* 25 Wis. 2d 645, 653, 131

---

[6]This court notes that medical malpractice actions are treated no differently than any other actions in which application of res ipsa loquitur is sought. Because of the complexity of medical malpractice cases, expert testimony is often needed to show that the damage/injury existing does not usually occur in the absence of negligence.

N.W.2d 314, 318 (1964) *(Fehrman II)*. However, in this case, the trial court did not exercise its discretion on this point. Therefore we examine the question anew and conclude that the testimony Lecander offered was so specific that it provided a full and complete explanation of the event. Because Lecander's two experts testified that the injury probably occurred during the blind nasal intubation, the giving of the res ipsa loquitur instruction would have been superfluous.[7]

We understand that this ruling puts the plaintiff in a unique, but unattractive position because he proved too much. We realize that specific negligence and res

---

[7]*See Knief v. Sargent,* 40 Wis. 2d 4, 9, 161 N.W.2d 232, 234 (1968) (Medical malpractice plaintiff who adduced expert medical testimony that defendant failed to exercise the requisite care and skill in deciding to perform surgery when conservative procedures were indicated, could not rely on res ipsa loquitur); *Puls v. St. Vincent Hospital,* 36 Wis. 2d 679, 687–88, 154 N.W.2d 308, 312–13 (1967) (Testimony that defendant nurses should have used side rails to prevent plaintiff in drugged condition from falling, and should have notified doctor sooner, foreclosed plaintiff's use of the res ipsa loquitur doctrine); *Carson v. City of Beloit,* 32 Wis. 2d 282, 285–86, 145 N.W.2d 112, 113–14 (1966) (Plaintiff who fell out of bed in hospital room and cracked his head could not rely on res ipsa loquitur after he brought evidence alleging that defendant doctor failed to check and see that his orders regarding side bed rails were being followed, failed to properly diagnose condition after fall and failed to take proper tests and timely X-rays could not rely on res ipsa loquitur); *Shurpit v. Brah,* 30 Wis. 2d 388, 392, 141 N.W.2d 266, 268 (1966) (Plaintiffs attempt to prove that several specific acts of defendant doctor did not meet the requisite degree of professional care and skill prevented them from relying on res ipsa loquitur in a case where allegedly negligent hand amputation resulted in gas gangrene and loss of entire arm).

ipsa loquitur may be plead in the alternative[8] and that mere evidence tending to show a specific act of negligence does not automatically foreclose dependence on res ipsa loquitur.[9] However, the doctrine of res ipsa loquitur should not be applied where the specifics of an event can be completely explained. *Mercurdo,* 82 Wis. 2d at 786-87, 264 N.W.2d at 261; *Turtenwald,* 55 Wis. 2d at 668, 201 N.W.2d at 6. Here, all experts agree that Billmeyer probably lacerated or perforated the posterior pharyngeal wall of Lecander's throat during her attempt at a blind nasal intubation. A trial was held on whether this act was a product of negligence and the jury determined that it was not.

The Lecanders also argue that the trial court should have changed the jury's answers to special verdict question no. 1, inquiring whether Billmeyer was negligent, and special verdict question no. 2, regarding whether the negligence was causal. The jury found that Billmeyer was not negligent and therefore did not need to answer the causation question.

The appellate court will not overturn a jury verdict if there is any credible evidence to support the jury's answers. *Meurer v. ITT General Controls,* 90 Wis. 2d 438, 450, 280 N.W.2d 156, 162 (1979). When the verdict has the trial court's approval, as it does here, this is even

---

[8]*Hoven v. Kelble,* 79 Wis. 2d 444, 450-51, 256 N.W.2d 379, 382 (1977); *Szafranski v. Radetzky,* 31 Wis. 2d 119, 132-33, 141 N.W.2d 902, 908 (1966).

[9]*Knief,* 40 Wis. 2d at 9, 161 N.W.2d at 234 ("the introduction of some evidence which tends to show specific acts of negligence . . . but does not purport to furnish a complete and full explanation of the occurrence does not deprive the plaintiff of the benefit of res ipsa loquitur."); *See* W. PAGE KEETON, ET AL., PROSSER AND KEETON ON THE LAW OF TORTS, SEC. 40 AT 260 (5TH ED. 1984).

more true. *Fehring v. Republic Ins. Co.,* 118 Wis. 2d 299, 305-06, 347 N.W.2d 595, 598 (1984).

■ Both of the Lecanders' experts testified that Billmeyer met the appropriate standard of care in attempting the blind nasal intubation, which they felt caused the injury. Moreover, Billmeyer's expert witness testified that she had met the appropriate standard of care throughout her treatment of Lecander. Although there were inconsistencies among the experts' testimony, the weight afforded to each piece of evidence is left to the province of the jury. *Id.* at 305, 347 N.W.2d at 598. There clearly was credible evidence that supported the jury's finding that Billmeyer was not negligent, and it need not have answered the causation question.

Next, the Lecanders argue that they are entitled to a new trial in the interest of justice because the trial court erred in instructing the jury about negligence. The circuit court's words with which they take issue were:

> The issue you must decide in determining whether they were negligent *is not whether they made a mistake,* but whether they failed to use the degree of care, skill, and judgment which is exercised in the same or similar circumstances by the average member of their respective professions and specialties. (Emphasis supplied).

The Lecanders assert that the language "not whether they made a mistake" in the instruction along with the trial court's refusal to allow an exemplar of the nasal tracheal tube used by Billmeyer to go to the jury and its refusal to instruct on res ipsa loquitur resulted in a miscarriage of justice and prevented the real controversy from being tried. We disagree.

Although the disputed language is unnecessary for the instruction, it properly states the law. "In a medical malpractice action, the relevant inquiry is not whether a physician has made a mistake; rather, the question is whether he or she was negligent." *Zintek v. Perchik,* 163 Wis. 2d 439, 457, 471 N.W.2d 522, 529 (Ct. App. 1991) (citing *Francois v. Mokrohisky,* 67 Wis. 2d 196, 201, 226 N.W.2d 470, 472 (1975)). Furthermore, the trial court has discretion to determine what exhibits will be permitted in the jury room, and the Lecanders have not shown that this discretion was abused. *Badger Bearing v. Drives & Bearings,* 111 Wis. 2d 659, 669, 331 N.W.2d 847, 853 (Ct. App. 1983). Last, as stated above, the trial court's refusal to instruct on res ipsa loquitur was proper. Justice was not miscarried, and the real controversy, whether Billmeyer was negligent, was tried.

*By the Court.*—Judgment affirmed.