# COURT OF APPEALS
## DECISION
## DATED AND FILED

## June 8, 2022

**Sheila T. Reiff**
**Clerk of Court of Appeals**

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP304**

Cir. Ct. No. **2021SC70**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

H&J PROPERTIES, LLC,

PLAINTIFF-RESPONDENT,

V.

JON MARK,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Fond du Lac County: PETER L. GRIMM, Judge. *Affirmed*.

¶1 KORNBLUM, J.[1] Jon Mark, pro se, appeals a judgment for eviction in favor of his landlord, H&J Properties, LLC (H&J). He does not contest

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

the amount of money damages. Mark argues that (1) the Center for Disease Control (CDC) eviction moratorium then in effect prohibited his eviction; (2) this was an illegal retaliatory eviction; (3) he was denied his ability to develop an argument that he was justified in withholding rent due to untenantability; and (4) the circuit court was biased against him. We reject those arguments and affirm.

## BACKGROUND

¶2    H&J rented a house to Mark in Fond du Lac, Wisconsin. For the first few years, the rent was $650 a month. The rent increased to $750 a month in January 2020, where it remained until January 4, 2021, when it was increased to $1,050. Over time, Mark fell behind in paying rent. On September 23, 2020, Mark used funds he received from an inheritance to make a lump-sum payment to H&J of $12,327.01. The money was used to pay off back rent owed, according to an agreement between H&J and Mark's father's estate.

¶3    According to the allegations in the complaint, Mark paid no rent for October, November and December 2020. He was incarcerated for part of that time, and was released in November 2020. (Mark did not argue that his incarceration was a defense to his nonpayment of rent.) On December 1, 2020, H&J sent a letter to Mark advising him that his rent would increase to $1,050 per month starting in January 2021. Mark did not pay January rent. In addition to the monthly rent, H&J alleged that Mark owed $411.49 for the water bill, which was

charged as a separate item.[2]  As of January 4, 2021, the balance due on the rent plus water was $3,711.49.

¶4      H&J mailed Mark a five-day notice on January 5, 2021, instructing him to pay rent or vacate on or before January 11, 2021.  When Mark did not pay rent, H&J filed the summons and complaint for eviction.  The court held a hearing on the matter on February 1, 2021.  H&J appeared through counsel, Dawn Sabel, who is a managing member of H&J.[3]  Mark appeared pro se.

¶5      Mark raised several challenges to the eviction.  First, Mark argued that H&J was prohibited from evicting him based on the CDC's COVID-19[4] ("COVID" or "COVID-19") eviction moratorium.[5]  Second, he argued that he was

---

[2] Although H&J filed a complaint against Mark for all amounts due, it eventually dropped its claim for the amount owed for the water bill.

[3] Both John and Dawn Sabel own H&J, an LLC.  Dawn Sabel testified on behalf of H&J. Both Sabels appeared in court.

[4] COVID or COVID-19 refers to "Coronavirus disease (COVID-19) [which] is an infectious disease caused by the SARS-CoV-2 virus." *Coronavirus*, WORLD HEALTH ORG., https://www.who.int/health-topics/coronavirus#tab=tab_1 (last visited May 31, 2022).  According to the Wisconsin Department of Health Services,

> COVID-19 is a communicable, respiratory disease that can cause severe illness in some people.  COVID-19 is easily spread from person to person through respiratory droplets and aerosol particles released by people with COVID-19 during coughing, sneezing, singing, talking, and breathing.  Since 2019, the spread of COVID-19 has had a devastating impact around the world and across our state.

*COVID-19 (Coronavirus Disease),* WIS. DEP'T OF HEALTH SERVS., https://www.dhs.wisconsin.gov/covid-19/index.htm (last visited May 31, 2022).

[5] As we discuss in detail below, there were several moratoria regarding evictions during the COVID-19 pandemic, starting in March 2020 and extending to August 2021.  These included a congressional moratorium, a CDC moratorium, a congressional extension of the CDC moratorium, and additional CDC moratoria.

evicted in retaliation for having contacted the health department "in regards to certain issues with the residence." Third, Mark alleged a violation of the Consumer Protection Act. Fourth, Mark alleged that H&J violated WIS. STAT. §§ 704.44 and 704.45 by increasing his rent in retaliation for Mark calling the health department.

¶6 At the February 1, 2021 hearing, Mark admitted that he had not paid rent for October 2020 through January 2021 and argued that H&J should excuse his nonpayment of rent because he had used $13,000 from his inheritance to bail himself out of jail at the end of November 2020 and was broke, having no source of income after getting out of jail. He also claimed severe financial hardship due to COVID-19.

¶7 Sabel testified as a member of H&J. On the topic of the COVID-19 eviction moratorium, Sabel testified that it did not apply to the eviction because the property has no mortgage at all, let alone a federally-funded mortgage.[6] She also testified that if the moratorium did apply, Mark had not complied with the tenants' responsibilities under the law. H&J had not been contacted by Mark about exercising his rights under the COVID-19 moratorium. Regarding the lack of rent payments, Sabel testified that after Mark made the lump-sum payment in September 2020, he made no further payments. Mark did not notify Sabel that he was avoiding paying rent. Sabel acknowledged that Mark was incarcerated for some of the time, but asserted that he still owed rent and that other people whom Mark knew were staying in the house. At some point, Mark's electricity was cut

---

[6] Sabel was under the erroneous assumption that that the original eviction moratorium under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), passed on March 27, 2020, was still in effect. Pub. L. No. 116-136, 134 Stat. 281 (2020).

off. When Mark was released from jail, he asked to put the electric bill in the company's name or Sabel's, because Mark could not get the electricity turned back on. H&J denied this request.

¶8    Mark testified on his own behalf. Mark admitted not paying rent for October 2020 through January 2021 and to owing the amount alleged other than the water bill. He testified that the COVID-19 moratorium applied to him based on information he saw on the CDC website's frequently asked questions page. He argued the current moratorium did not apply only to federally-funded or federally-backed mortgages and applied to a private entity. Mark stated he did not have the information on the law available to the court as he did not have ink for his printer. He testified he did not like that he was being evicted and that he had no funds after he was released from jail and paid the Sabels. He did not have a job and had medical issues. Because the Sabels had been willing to wait "a year and a half" for the lump-sum payment in the past, Mark thought they should be willing to wait for him to pay the rest of the rent owed. Mark did not provide evidence showing that he complied with the tenants' responsibilities under the COVID-19 moratorium.

¶9    Regarding the health department, Mark testified that there was a "misunderstanding." He called the department to see what his rights were regarding having the power and gas restored, "and they ended up making this a big deal which I wasn't trying to do." The health department contacted the Sabels and got the power restored, then Mark got the eviction notice. His conclusion was that the eviction was retaliatory.

¶10    Sabel testified that H&J had received no letters from the health department or city inspector advising them of corrections or problems. She stated

that, "the inspector that we had go through the property had no issue with anything in the property so and we got the electric back on."

¶11    The circuit court ruled that the COVID-19 eviction moratorium did not apply to H&J's property due to the lack of a federalized mortgage, and if it did apply, it was unconstitutional because it exceeded the powers of the federal government.  The court further ruled that WIS. STAT. § 704.44 did not apply because Mark could not show that the lease itself contained any illegal provisions.[7]  The court found that Mark had no defense to the failure to pay rent for October 2020 and thereafter because he failed to demonstrate that the property had a "material and substantial defect of the premises making it uninhabitable." The court found no good cause to excuse Mark's non-payment of rent, and concluded that the eviction was not retaliatory.

## DISCUSSION

*Standard of Review*

¶12    Whether the COVID-19 eviction moratorium applies and the allegation of judicial bias involve questions of law, which we review independently.  *See Cuellar v. Ford Motor Co.,* 2006 WI App 210, ¶9, 296 Wis. 2d 545, 723 N.W.2d 747; *State v. Herrmann*, 2015 WI 84, ¶23, 364 Wis. 2d 336, 867 N.W.2d 772.

¶13    Regarding issues concerning sufficiency of the evidence, we will uphold the circuit court's findings of fact unless they are clearly erroneous.  WIS.

---

[7] Mark admitted that the circuit court was correct in that ruling and does not challenge it on appeal.

STAT. § 805.17(2). "[A] finding of fact is clearly erroneous when 'it is against the great weight and clear preponderance of the evidence.'" ***Phelps v. Physicians Ins. Co. of Wis., Inc.***, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615 (citation omitted). The circuit court "is the ultimate arbiter of the credibility of the witnesses" when it acts as the finder of fact. ***Cogswell v. Robertshaw Controls Co.***, 87 Wis. 2d 243, 250, 274 N.W.2d 647 (1979). If "more than one reasonable inference can be drawn from the credible evidence, [we] must accept the inference drawn by the [circuit court]." ***Id.***

*COVID-19 Eviction Moratorium*

¶14    The circuit court ruled that the eviction moratorium did not apply in this case, and if it did, it was unconstitutional because it exceeded the federal government's powers. After careful review, we affirm the circuit court's conclusion, but for different reasons. "[R]eviewing courts may affirm the circuit court's decision even if the circuit court reached its result for different reasons." ***Lecander v. Billmeyer***, 171 Wis. 2d 593, 602, 492 N.W.2d 167 (Ct. App. 1992).

¶15    The circuit court erroneously believed that the COVID-19 eviction moratorium in effect was the CARES Act moratorium, which exempted residences that did not have a federally-backed mortgage.[8] However, the CARES Act moratorium had expired on July 24, 2020, 120 days after its passage. 15 U.S.C. § 9058(b).

---

[8] The circuit court's belief appears to be based on a "CARES Act Eviction Certification" submitted by H&J. On March 27, 2020, Congress passed the CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020). The CARES Act included the first COVID-19 eviction moratorium, which did not apply to properties without a federally backed mortgage loan. Pub. L. No. 116-136, § 4024(a)(2)(B)(i), (b), 134 Stat. 281, 492-494; 15 U.S.C. § 9058(a)(2)(B)(i), (b).

¶16   As Mark correctly argued before the circuit court, the COVID-19 eviction moratorium in effect at the time of this eviction was an extension of a moratorium put into effect by the CDC.  The original CDC eviction moratorium applied to all residential properties, expanding the reach of the moratorium to all residential properties nationwide.  *Alabama Ass'n of Realtors v. U.S. Dep't of Health & Hum. Servs.*, 539 F. Supp. 3d 29, 34 (D.D.C. 2021), *appeal dismissed*, No. 21-5093, 2021 WL 4057718 (D.C. Cir. Sept. 3, 2021).  That moratorium became effective on September 4, 2020, and was set to expire on December 31, 2020.[9]  Congress extended the CDC's original moratorium through January 31, 2021.[10]  Thus, the moratorium in effect at the time H&J filed this action was the congressional extension of the CDC moratorium.

¶17   On appeal, H&J recognizes that the CDC moratorium, not the CARES Act moratorium, arguably applies in this case.

¶18   Several months after the hearing in this case, the United States Supreme Court rendered a decision that had the effect of holding that the CDC moratorium and congressional extension, as well as a subsequent CDC

---

[9] Temporary Halt in Residential Evictions To Prevent the Further Spread of COVID-19, 85 Fed. Reg. 55292-01, 55292 (Sept. 4, 2020).

[10] The specific language extending the moratorium reads:

> SEC. 502. EXTENSION OF EVICTION MORATORIUM.  The order issued by the Centers for Disease Control and Prevention under section 361 of the Public Health Service Act (42 U.S.C. 264), entitled "Temporary Halt in Residential Evictions To Prevent the Further Spread of COVID-19" (85 Fed. Reg. 55292 (September 4, 2020) is extended through January 31, 2021, notwithstanding the effective dates specified in such Order.

Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, § 502, 134 Stat. 1182, 2078-79 (2020).

moratorium, violated federal law. The Supreme Court considered a lower court order that had held the original moratorium and congressional extension exceeded the CDC's statutory authority under federal law. The Court lifted the stay of this lower court order, allowing it to go into effect. *Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2486 (2021) (per curiam).[11] As the circuit court in this case held, albeit for other reasons, the eviction moratorium violated federal law. We therefore affirm the circuit court's conclusion that it was not a viable defense to this eviction. *See State v. Prado*, 2020 WI App 42, ¶37 n.11, 393 Wis. 2d 526, 947 N.W.2d 182 (citation omitted) ("[a]ll state courts, of

---

[11] In *Alabama Ass'n of Realtors v. U.S. Dep't of Health & Hum. Servs.*, 539 F. Supp. 3d 29 (D.D.C. 2021), *appeal dismissed*, No. 21-5093, 2021 WL 4057718 (D.C. Cir. Sept. 3, 2021), the plaintiffs challenged the statutory authority of the CDC to issue the original CDC moratorium, as well as the congressional extension, and the subsequent CDC extension. On May 5, 2021, the district court granted summary judgment to the plaintiffs, holding that the CDC had "exceeded the authority provided in § 361 of the Public Health Service Act, 42 U.S.C. § 264(a)." *Id.* at 42. The CDC argued that even if the original CDC order exceeded statutory authority, Congress ratified the CDC order when it extended the order. *Id.* The district court rejected this argument, writing that "[m]ere congressional acquiescence in the CDC's [interpretation of the Public Health Service Act] ... does not make it so." *Id.* at 43. As the court explained, "[b]ecause Congress withdrew its support for the CDC Order on January 31, 2021, the order now stands—and falls—on the text of the Public Health Service Act alone." *Id.* The district court held that the moratorium exceeded the CDC's statutory authority. *Id.* The court stayed its order pending appeal, *Alabama Ass'n of Realtors v. U.S. Dep't of Health & Hum. Servs.*, 539 F. Supp. 3d 211, 218 (D.D.C. 2021), and later denied plaintiffs' motion to vacate the stay. *Alabama Ass'n of Realtors v. U.S. Dep't of Health & Hum. Servs.*, 557 F. Supp. 3d 1 (D.D.C. 2021).

The D.C. Circuit Court of Appeals declined to lift the stay, *Alabama Ass'n of Realtors v. U.S. Dep't of Health & Hum. Servs.*, No. 21-5093, 2021 WL 2221646, at *4 (D.C. Cir. June 2, 2021), as did the Supreme Court. *Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2320 (2021) (mem.). The CDC moratorium expired on July 31, 2021. The matter would have concluded had the CDC not issued another extension on August 3, 2021, to expire on October 3, 2021. Temporary Halt in Residential Evictions in Communities With Substantial or High Transmission of COVID-19 To Prevent the Further Spread of COVID-19, 86 Fed. Reg. 43244-01 (Aug. 6, 2021). The plaintiffs eventually returned to the Supreme Court, which vacated the stay of the district court order invalidating the moratorium. *Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2488 (2021) (per curiam). The Court held that the moratorium was beyond the scope of the CDC's statutory authority. *Id.* at 2488-89. The Court stated, "[i]f a federally imposed eviction moratorium is to continue, Congress must specifically authorize it." *Id.* at 2490.

course, are bound by the decisions of the United States Supreme Court on matters of federal law"), *aff'd*, 2021 WI 64, 397 Wis. 2d 719, 960 N.W.2d 869.

¶19 Even if a court were to conclude that the congressional extension of the CDC moratorium was in effect and was not invalidated by subsequent Supreme Court action, H&J correctly noted that Mark did not qualify for protection under the moratorium because he did not comply with the tenants' responsibilities under it.[12]

¶20 The record supports H&J's position. As H&J argued, the moratorium required the tenant to submit a declaration under penalty of perjury to the landlord confirming the following information:

(1) The individual has used "best efforts to obtain all available government assistance for rent or housing";

(2) The individual either (i) expects "to earn no more than $99,000 in annual income for Calendar Year 2020 (or no more than $198,000 if filing a joint tax return)"; (ii) "was not required to report any income in 2019 to the U.S. Internal Revenue Service"; or (iii) "received an Economic Impact Payment (stimulus check) pursuant to Section 2201 of the CARES Act";

---

[12] H&J also argued that because the eviction concerned failure to pay a water bill as well as rent, the moratorium did not apply. The moratorium by its terms does not exclude evictions based on a tenant's failure to pay rent *and* utilities. The term "eviction" is defined as "any action by a landlord, owner of a residential property, or other person with a legal right to pursue eviction or a possessory action, to remove or cause the removal of a covered person from a residential property. This does not include foreclosure on a home mortgage." Temporary Halt in Residential Evictions, 85 Fed. Reg. at 55293. The moratorium does exclude evictions based on other types of problems, including criminal activity. *Id.* at 55294. However, it does cover evictions because the tenant has not made "timely payment of rent or similar housing-related payment …." *Id.* The eviction in this case included both unpaid rent from October through January and Mark's failure to pay a smaller amount owed for water service. Thus, we cannot conclude that the moratorium excluded this eviction.

(3) The individual is "unable to pay the full rent or make a full housing payment due to substantial loss of household income, loss of compensable hours of work or wages, lay-offs, or extraordinary out-of-pocket medical expenses";

(4) The individual is "using best efforts to make timely partial payments that are as close to the full payment as the individual's circumstances may permit, taking into account other nondiscretionary expenses"; and

(5) Eviction would likely render the individual homeless—or force the individual to move into and live in close quarters in a new congregate or shared living setting—because the individual has no other available housing options.

Temporary Halt in Residential Evictions To Prevent the Further Spread of COVID-19, 85 Fed. Reg. 55292, 55297 (Sept. 4, 2020).

¶21 The circuit court did not rule on whether Mark complied with the moratorium's requirements because it had ruled that the moratorium did not bar this eviction. Nonetheless, the record contains evidence that Mark did not comply. Sabel stated that she had not been notified of any efforts by Mark "to obtain government assistance." Mark testified that he did not pay rent because he was broke after bailing himself out of jail and using his inheritance to pay the back rent he owed. Mark stated that his income from the Ho-Chunk Tribe had been reduced and that he had applied for emergency housing through the tribe, but he did not provide a sworn declaration of his inability to pay rent to H&J during the time he was requesting the benefit of the moratorium and he did not provide such documentation to the circuit court. He also did not show any effort to continue paying rent. For these reasons, Mark failed to present sufficient evidence to the

circuit court to substantiate his compliance with his responsibilities under the moratorium.[13]

*Retaliatory Eviction*

¶22 Mark argues that the eviction was filed in retaliation for his calling the health department and the health inspector, contrary to WIS. STAT. § 704.45, which states as follows:

> **(1)** Except as provided in sub. (2), a landlord in a residential tenancy may not increase rent, decrease services, bring an action for possession of the premises, refuse to renew a lease or threaten any of the foregoing, if there is a preponderance of evidence that the action or inaction would not occur but for the landlord's retaliation against the tenant for doing any of the following:
>
>> **(a)** Making a good faith complaint about a defect in the premises to an elected public official or a local housing code enforcement agency.
>>
>> **(b)** Complaining to the landlord about a violation of [WIS. STAT. §] 704.07 or a local housing code applicable to the premises.
>>
>> **(c)** Exercising a legal right relating to residential tenancies.
>
> **(2)** Notwithstanding sub. (1), a landlord may bring an action for possession of the premises if the tenant has not paid rent other than a rent increase prohibited by sub. (1).
>
> **(3)** This section does not apply to complaints made about defects in the premises caused by the negligence or improper use of the tenant who is affected by the action or inaction.

---

[13] Mark filed a Motion for Reconsideration, arguing that the trial court erred in concluding that the moratorium did not apply to him, on the same date that he filed the Notice of Appeal. He did not provide any additional information in that motion regarding compliance with tenant's responsibilities. This court denied H&J's Motion to Supplement the Record with the briefs and order relating to the Motion for Reconsideration. Therefore, any information contained in these documents is not part of the record on appeal.

¶23     Mark argues that H&J retaliated against him by increasing his rent from $650 to $750 per month, and then to $1,050 on January 1, 2021. The rent schedule attached to the complaint verifies these rent increases.[14]  Mark argues that H&J increased his rent after he called to get the electricity in the premises turned on after it had been shut off, thereby involving the health department and the city inspector. He claims that H&J's rent increases were in retaliation for reporting it to these agencies.

¶24     The testimony at trial showed that Mark did not deny he had not paid the rent from October through the time of the eviction. Sabel testified that the electricity was cut off to the house at some point while Mark was in prison. When Mark got out of prison "he asked to put electric in his name—in our name or the company's name because he owed electric and couldn't get electric on and we denied that." Sabel testified that they had not received any letters or notifications

---

[14] At several points during this appeal, Mark has attempted to supplement the record with information that he did not provide to the circuit court. He has included such information in his brief, his reply brief, and in two motions to supplement the record. For example, in his brief, Mark asks that we take judicial notice of correspondence between himself and H&J that he claims bear on the issue of retaliation. In addition, on April 15, 2022, Mark filed a Motion to Take Judicial Notice of a hand-written, undated and unsigned one-page document that he claims is from an electrician and documents problems with the home. Mark makes similar arguments in his reply brief and provides information in his appendix. This information does not fall within the statute governing judicial notice, WIS. STAT. § 902.01(2)(a) and (b) because it did not concern facts generally known within the territorial jurisdiction of the trial court or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The information Mark submitted is not generally known, and would require testimony to explain and authenticate. Finally, on May 6, 2022, Mark filed a Motion to Supplement the Record with a video that he referenced in his brief. We deny both motions. We will not consider new evidence presented for the first time on appeal. *Van Deurzen v. Yamaha Motor Corp. USA*, 2004 WI App 194, ¶6, 276 Wis. 2d 815, 688 N.W.2d 777. The Appendix to Mark's brief also contains information not submitted to the circuit court. We will not consider this information because it is not part of the record. *See United Rentals, Inc. v. City of Madison*, 2007 WI App 131, ¶1 n.2, 302 Wis. 2d 245, 733 N.W.2d 322 (facts in briefs must be supported by citations to the record).

from the inspector; "in fact, the inspector that we had go through the property had no issue with anything in the property so and we got the electric back on."

¶25    Mark acknowledged that he had not paid rent after making the lump-sum payment in September.  He testified that he used the remaining inheritance money to bail himself out of jail and was broke.  He stated he had lost income from the Ho-Chunk Nation, had not been able to get a job, and had medical issues.

¶26    The circuit court found insufficient evidence of retaliation.  We will sustain that court's findings of fact unless they are clearly erroneous.  WIS. STAT. § 805.17(2).  WISCONSIN. STAT. § 704.45 requires that for the court to find retaliatory eviction, the court must find by a preponderance of the evidence "that the action or inaction would not occur but for the landlord's retaliation against the tenant" for doing certain things, including "[m]aking a good faith complaint about a defect in the premises to an elected public official or a local housing code enforcement agency," or "[c]omplaining to the landlord about a violation of [WIS. STAT. §] 704.07 or a local housing code applicable to the premises."  WIS. STAT. § 704.45(1)(a)-(b).  The circuit court concluded there was insufficient evidence to sustain such a finding.  We agree.

¶27    The evidence established that the electricity had been turned off and Mark was unable to get it turned back on because he owed money to the electric company.  Mark asked that the electricity be placed in H&J's or the Sabels' name, which they refused.  Mark called someone about his legal rights, and an inspector came to the property and gave it a good report.  Sabel testified that she had not received any notifications of any problems from the inspector.  The record contains no evidence that Mark even reported H&J to the health department.

¶28 On appeal, Mark makes several factual allegations about the condition of the home. Mark states that (1) he had to wear multiple layers of clothing and he was cold in the home; (2) the house was untenantable for a period of time due to the cold; and (3) the local health department put a lot of pressure on H&J to turn on the electricity. Mark also claims to have videotape of bad conditions in the home. But Mark did not present any of this evidence at trial. He contends that he was unable to testify to these facts because the trial court cut him off. The record does not support this claim, which we discuss below. This court is an error correcting court. *Cook v. Cook*, 208 Wis. 2d 166, 188, 560 N.W.2d 246 (1997). We are not an appropriate venue to retry a case with evidence that was not presented to the circuit court or derived from the record.

*Violations of WIS. STAT. § 704.07(2)(a) and (b).*

¶29 Within his argument about retaliatory eviction, Mark argues that H&J violated WIS. STAT. § 704.07(2)(a) and (b), but that he was not allowed to develop this argument at trial. Specifically, he contends that "[t]he house was untenantable between November 27, 2020, and about December 20, 2020," contrary to § 704.07(2)(a) and (b). Section 704.07(2)(a) provides as follows:

> **(a)** Except for repairs made necessary by the negligence of, or improper use of the premises by, the tenant, the landlord has a duty to do all of the following:
>
> **1.** Keep in a reasonable state of repair portions of the premises over which the landlord maintains control.
>
> **2.** Keep in a reasonable state of repair all equipment under the landlord's control necessary to supply services that the landlord has expressly or impliedly agreed to furnish to the tenant, such as heat, water, elevator, or air conditioning.
>
> **3.** Make all necessary structural repairs.
>
> **4.** Except for residential premises subject to a local housing code, and except as provided in sub. (3) (b), repair or replace

> any plumbing, electrical wiring, machinery, or equipment furnished with the premises and no longer in reasonable working condition.
>
> 5. For a residential tenancy, comply with any local housing code applicable to the premises.

¶30      The circuit court did not make any findings regarding whether H&J violated this statute because Mark did not argue it at trial. To the extent the argument is implied in Mark's retaliation defense, no evidence in the record shows any housing code violations, failure to make structural repairs, or keeping the housing in poor repair. The additional information that Mark supplies in his brief was not presented to the trial court, and this court will not consider it. *Van Deurzen v. Yamaha Motor Corp. USA*, 2004 WI App 194, ¶6, 276 Wis. 2d 815, 688 N.W.2d 777.

¶31      Mark argues that he did not make this argument because the circuit court did not allow him to do so because it was "in a hurry" to get the case over with. Nothing in the record supports this conclusion. On the contrary, the record shows that the court was willing to entertain any arguments that Mark made, including those he did not make previously. At the beginning of the case, the court asked Mark to outline his legal arguments, which Mark did. He did not mention WIS. STAT. § 704.07. The court specifically asked Mark if he had "anything else," and Mark said "Wisconsin Statute 704.44 and 704.45."[15]  Nothing in the record shows that the court prevented Mark from raising any defenses at any time. The transcript of the hearing shows that even after the court made its ruling, the court allowed Mark to raise a new issue, that notice had been defective. The

---

[15] Mark dropped the argument over WIS. STAT. § 704.44 at trial, and he does not raise it here.

court entertained arguments and made a ruling on that issue. The court did not stop Mark from making this argument. The evidence is insufficient to show that the court prevented Mark from making any arguments.

*Systematic Bias*

¶32    Finally, Mark argues that the circuit court had "systematic bias" against him because the court would not allow him to develop his arguments. In his reply brief, he points to his statement at the hearing, "I would like to provide some documentation," and argues that the circuit court prevented him from doing so.

¶33    We presume that a "judge has acted fairly, impartially, and without bias; however, this presumption is rebuttable." **State v. Goodson**, 2009 WI App 107, ¶8, 320 Wis. 2d 166, 771 N.W.2d 385. "A defendant may rebut the presumption by showing that the appearance of bias reveals a great risk of actual bias. Such a showing constitutes a due process violation." **State v. Herrmann**, 2015 WI 84, ¶3, 364 Wis. 2d 336, 867 N.W.2d 772 (citations omitted). "Whether a judge was objectively not impartial is a question of law that we review independently." *Id.*, ¶23 (citation omitted).

¶34    The record does not substantiate Mark's assertion of bias. Mark made the statement about providing documentation at the very beginning of the eviction hearing. The circuit court was attempting to ascertain Mark's arguments, and whether the court needed to hold an evidentiary hearing. The court took a break to hear its other cases, then held the evidentiary hearing. During the hearing, Mark did not offer the documentation that he stated he wanted to present. Because it was not offered, the court did not refuse to consider it.

*New Arguments Raised in Reply Brief*

¶35    Mark raises three new grounds for reversal in his reply brief: (1) Sabel committed professional misconduct as an attorney making a materially false statement; (2) the real controversy has not been tried; and (3) Mark is entitled to a new trial at which he can present the evidence that he did not present in the first trial.  This court will not consider arguments raised for the first time in his reply brief.  *See **Swartwout v. Bilsie***, 100 Wis. 2d 342, 346 n.2, 302 N.W.2d 508 (Ct. App. 1981).

*By the Court.*—Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.